David D. Lin, Esq. (DL-3666)
Brett Lewis, Esq. (BL-6812)
LEWIS & LIN, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Telephone: (718) 243-9323
Facsimile: (718) 243-9326
david@ilawco.com
brett@ilawco.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPIN MASTER LTD. and SPIN MASTER, INC.<br>*Plaintiffs,*<br>v.<br>ACIPER *et al.*<br>*Defendants.* | Case No.: 19-cv-6949 (VSB) |

**DEFENDANT JSCOUT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISSOLVE OR MODIFY**
**THE *EX PARTE* TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 4

PROCEDURAL and FACTUAL BACKGROUND ........ 5

ARGUMENT ........ 8

I. PLAINTIFFS CANNOT SHOW CONTINUED INJUNCTIVE RELIEF IS JUSTIFIED ........ 8

- A. Plaintiffs Have Failed to Demonstrate Irreparable Harm in the Absence of an Asset Freeze ........ 9
- B. Injunctive Relief is not Otherwise Warranted ........ 12
- C. The Public Interest Does Not Favor Continuing the Asset Freeze ........ 13
- D. The Balance of Hardships Favors Defendants ........ 14

II. JSCOUT IS ENTITLED TO AN AWARD OF ITS ATTORNEYS' FEES ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases**

*Bebapci v. Tune Core Inc.*,
No. 15-cv-7141 (ENV)(ST), 2016 WL 6804919, at *4 (E.D.N.Y. Nov. 16, 2016) ................. 10

*C.D.S., Inc. v. Zetler*, 217 F. Supp.3d 713, 716 n.1 (S.D.N.Y. 2016)............................................ 9

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995) .................... 13

*Gardner v. Weisman*,
No. 06-cv-5998 (WHP), 2006 WL 2423376 (S.D.N.Y. Aug. 21, 2006) .................................... 9

*Gucci America, Inc. v. Weixing Li,* 768 F. 3d 122, 129 (2d Cir. 2014) ......................................... 9

*Haggiag v. Brown*, 728 F. Supp. 286, 291 (S.D.N.Y. 1990) ....................................................... 11

*JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed. Appx. 31 (2d Cir. 2015).............................. 9

*JSC Foreign Econ Ass'n Technostroyexport v. International Dev. & Trade Servs., Inc.*,
295 F. Supp.2d 366, 390 (S.D.N.Y. 2003) ............................................................................ 10, 11

*Klipsch Grp., Inc. v. Big Box Store Ltd.*,
No. 12 CIV. 6283 AJN, 2012 WL 5265727, at *11 (S.D.N.Y. Oct. 24, 2012) .................. 10, 11

*Marblegate Asset Mgmt. v. Education Mgmt. Corp.*, 75 F. Supp.3d 592 (S.D.N.Y. 2014) ........... 9

*Para Laboratories Inc. v. Better Botanicals Inc.*,
No. cv-98-1523, 1998 WL 670239, at *5-6 (E.D.N.Y. May 6, 1998)..................................... 13

*Salinger v. Colting,* 607 F.3d 68, 78 n.7 (2d Cir. 2010) ............................................................ 12

*Sterling Ornaments Pvt. Ltd. v. Hazel Jewelry Corp.*,
No. 14-cv-8822 (JSR), 2015 WL 3650182, at *1 (S.D.N.Y. June 10, 2015) .......................... 10

**Statutes**

15 U.S.C. § 1115(b)(4) ................................................................................................ 12

**Rules**

Fed. R. Civ. P. 60 ........................................................................................................ 4

Fed. R. Civ. P. 64 ........................................................................................................ 4

Fed. R. Civ. P. 65 ........................................................................................................ 4, 6, 8

Defendant Shenzhen Yongli Hongtai Investment Development Co., Ltd., d/b/a Jscout ("**Defendant**" or "**Jscout**"), by and through its counsel Lewis & Lin, LLC, hereby moves this Court under Fed. R. Civ. P. 60, 64 and 65 to dissolve or modify the *ex parte* temporary restraining order issued by this Court on August 1, 2019, and as extended by order dated August 16, 2019, granting Plaintiffs SPIN MASTER LTD. and SPIN MASTER, INC.'s (**"Plaintiffs"** or **"Spin Master"**) request to restrain Defendants' assets and use of its online storefront pending a hearing on Spin Master's request for a preliminary injunction (ECF Doc. No. 4 (the initial TRO), 10 (the extension), collectively, the **"TRO"**).

## PRELIMINARY STATEMENT

Spin Master and Defendant both sell remote controlled cars that have the capability of climbing up walls, which is where the similarities end. Spin Master alleges it owns trademarks for ZERO GRAVITY™ and WALL CLIMBER®, and has obtained a TRO and asset freeze against 54 defendants, including Defendant, for alleged trademark infringement of its WALL CLIMBER® mark. Spin Master's wall climbing car is not marketed or promoted as "WALL CLIMBER®," however, but rather under its AIR HOGS® and ZERO GRAVITY™ brands. For the following reasons, Defendant now seeks to dissolve the TRO and asset freeze as against it.

*First*, Spin Master cannot meet the procedural and substantive requirements justifying the continued and drastic relief of a TRO and asset freeze against Defendant. At this time, Spin Master's argument rests solely on conclusory allegations that Defendant is based abroad and contains no evidence demonstrating Defendant intends to dissipate assets to frustrate any potential judgment. This is insufficient.

*Second*, Spin Master's claims against Defendant are extremely weak. The cars look nothing alike. Defendant's exterior packaging does not use any of the registered marks and

would not confuse consumers as to their origin. Rather, the only allegations of Defendant's use of Plaintiff's mark appears to refer to Defendant's use of a descriptive phrase – "Wall Climber Car" – on the cover of a user manual contained ***inside*** the packaging of Defendant's toy. Defendants use this phrase to *describe* their car's functionality, and are not using it on any consumer facing product packaging, marketing, or in any way as a trademark. Indeed, there cannot be a likelihood of consumer confusion where the only reference to a "Wall Climber Car" is in an owner's manual.

Accordingly, and as set forth more fully below, the Court should dissolve the TRO and asset freeze as against Defendant.

**PROCEDURAL and FACTUAL BACKGROUND**

On or around July 25, 2019, Plaintiffs brought an action under seal and moved *ex parte* for an order, *inter alia*, restraining Defendant's assets and use of its online Amazon.com storefront. By order dated August 1, 2019, the Court granted Plaintiffs' *ex parte* request to restrain Defendants' assets and use of its online storefront pending a hearing on Plaintiffs' request for a preliminary injunction (ECF Doc. No. 4). The TRO stated, in relevant part, as follows:

> Third Party Service Providers and Financial Institutions are hereby restrained and enjoined from [:]
>
> 1) Secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;
>
> Third Party Service Providers are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the hearing and determination of Plaintiffs' Application for a preliminary injunction as referenced in Paragraph (II)(A) below, or until further order of the Court:
>
> 1) Within five (5) days after receipt of service of this Order, providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts,

> including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts[.]

(ECF Doc. No. 4, at 7-8).

Under Federal Rule 65(b)(2), the TRO expired on August 15, 2019. By Order dated August 16, 2019, the Court granted Plaintiffs' request for an extension of the TRO through October 25, 2019, provided that "if Defendants believe they will be prejudiced by the duration of the TRO, they may submit a request to this Court for the show cause hearing to be rescheduled to a date earlier than October 25, 2019." (ECF No. 10).

Jscout received electronic notice of this suit and Order to Show Cause by e-mail on August 20, 2019 and promptly engaged counsel.

At present, Defendant offers over seventy items for sale on its Amazon storefront. Le Decl. ¶ 2. Since 2017, Defendant has made approximately $1,820,634 in total sales. *Id.* ¶ 3. Spin Master alleges intellectual property issues as against only one of Defendant's products, listed on Amazon under Amazon Standard Identification Number (ASIN) numbers: Parent ASIN B07KLSB6NZ and Child ASIN B07FKRY7CK (the **"Disputed Product"**). *Id.* ¶ 4. Defendant's sales of the Disputed Product comprise approximately only 30% of its business. *Id.* ¶ 5. Since entry of the Court's Order August 1, 2019, all of Defendant's funds have become frozen, including funds related to other, unrelated products. *Id.* ¶ 8. Defendant is also refraining from selling any of its products on Amazon until its motion can be considered, as those funds too would be frozen. Accordingly, Defendant's business is extremely prejudiced by the continued freezing of all of the assets in its Amazon storefront, 70% of which have nothing to do with the Disputed Product.

***Spin Master's "Air Hogs" Car***

Spin Master alleges, generally, that they produce a line of toy products marketed under the brand name "Air Hogs" including an "Air Hogs" toy car – the Zero Gravity Laser Racer. First Amended Complaint (**"FAC"**) ¶ 11[1]. Plaintiffs claim they are the owners of U.S. Trademarks for WALL CLIMBER® and ZERO GRAVITY®. *Id.* ¶ 14, Ex. B. As actually used in commerce, Plaintiffs' exterior packaging of the relevant Air Hogs toy car simply indicates a trademark registration only in its "Air Hogs" mark, and otherwise generically describes the car as a "real wall climber" that "chases [a] laser" and "drives on walls [and/or] ceilings." FAC Ex. A at 2-3. The Air Hogs instruction guide indicates the packaging includes a "Zero Gravity™ Laser Wall Racer" and a gun-shaped Controller which allows a user to point a laser beam at the ground or a wall which the car will follow. FAC Ex. A at 5. The manual also refers to the car generically as a "wall climber" (*see id.* at bottom of 5) type car and suggests ownership only in its brand of "Zero Gravity™" cars. *See id.* at 6-8. Plaintiffs' authentic Air Hogs cars are either red or blue. *Id.* at 1, 9.

Spin Master further alleges that numerous defendants offer "counterfeit products" through storefronts on Amazon.com that are "nearly indistinguishable from Plaintiffs' Racer Products, only with minor variations that no ordinary consumer would recognize." FAC ¶¶ 33, 35. As to Defendant, Spin Master alleges Jscout's "Epoch Air remote control car" offered through its Amazon.com storefront is such a "counterfeit" product. Yamali Decl. Ex. A at 321. Notably, nowhere in the product description's heading does Defendant indicate its car is manufactured by Spin Master, is an "Air Hogs" brand car or that it is a "ZERO GRAVITY" or "WALL CLIMBER" brand car. *Id.* at 322. Rather, Defendant's store accurately describes the

---

[1] Spin Master also uses the term Racer Products as shorthand for its Air Hogs Zero Gravity Laser Racer. *See* FAC at ii.

product as a remote-control car with a "wall climbing dual mode" and a "360º Rotating Stunt" that would be a suitable Christmas gift for children. *Id.*[2]

Spin Master further alleges it purchased a grey remote-controlled car from Jscout's storefront. Yamali Decl. ¶ 21, Ex. A at 327-328. That car was shipped to its counsel from Jscout, 172 Trade Street, Lexington, KY 40511. *Id.* at 330 (shipping label). The exterior packaging for the car indicates the product is a "WallClimbingCar" made by "EpochAir" which uses a dual joystick infrared ray remote control – not a laser gun that shoots a beam on the wall. The packaging further indicates the car can do a 360º rotation stunt and is capable of "running on the wall or glass" and "speeding on the ground." Yamali Decl. Ex A at 331-334. The cars look nothing alike, beyond both having four wheels and being styled as types of sports cars. Plaintiffs apparently allege that the use of generic language "Wall Climber Car Use Manual"—contained inside the packaging and visible to a consumer only after purchase—constitutes infringement of its "WALL CLIMBER" mark. *See id.* at 335.

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 65(b)(4), "on 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires."[3]

## I. PLAINTIFFS CANNOT SHOW CONTINUED INJUNCTIVE RELIEF IS JUSTIFIED

[2] Plaintiffs do not allege to have exclusive ownership in any patented technology that would enable a remote-controlled car to climb walls.

[3] By order dated August 16, 2019, the Court further invited Defendants prejudiced by the TRO to submit a request to this Court for the show cause hearing to be rescheduled to a date earlier than October 25, 2019. (ECF No. 10).

On a motion to dissolve an *ex parte* temporary restraining order, the party that obtained the order bears the burden of justifying continued injunctive relief. *See Gardner v. Weisman*, No. 06-cv-5998 (WHP), 2006 WL 2423376, at *1 (S.D.N.Y. Aug. 21, 2006). Spin Master has the burden of demonstrating (1) a likelihood of success on the merits; (2) a likelihood that it will suffer irreparable harm if the TRO is not continued; (3), that the balance of hardships is in its favor; and (4) that the relief is in the public interest. *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed. Appx. 31, 33 (2d Cir. 2015) (summary order), *citing Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010).[4] Irreparable harm is a *sine qua non* for a TRO or preliminary injunction and a plaintiff must first demonstrate such harm would be likely in the absence of a TRO before the other requirements are considered. *Id.* at 33; *accord Marblegate Asset Mgmt. v. Education Mgmt. Corp.*, 75 F. Supp.3d 592, 605 (S.D.N.Y. 2014) (noting "irreparable harm is the single most important prerequisite" for the issuance of a TRO). As set forth below, Spin Master cannot meet its burden here.

### *A. Plaintiffs Have Failed to Demonstrate Irreparable Harm in the Absence of an Asset Freeze*

The continued imposition of the drastic remedy of a TRO and an asset freeze is unwarranted here. Normally, "district courts have no authority to issue a prejudgment asset freeze pursuant to Rule 65 where such relief was not traditionally accorded by courts of equity." *Gucci America, Inc. v. Weixing Li,* 768 F. 3d 122, 129 (2d Cir. 2014). In the rare cases where the Court may exercise its equitable power to do so, Courts by and large decline to do so when the Plaintiff has not shown irreparable harm or a likelihood of success on the merits. *See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, Inc., 295 F. Supp. 2d 366,

[4] Although *JBR* concerned a preliminary injunction, "the legal standards governing preliminary injunctions and temporary restraining orders are the same." *C.D.S., Inc. v. Zetler*, 217 F. Supp.3d 713, 716 n.1 (S.D.N.Y. 2016).

389 (S.D.N.Y. 2003). A TRO is appropriate only if a plaintiff can show "a significant risk that the assets frozen would dissipate rendering enforcement of a judgment impossible." *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 CIV. 6283 AJN, 2012 WL 5265727, at *11 (S.D.N.Y. Oct. 24, 2012). Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Sterling Ornaments Pvt. Ltd. v. Hazel Jewelry Corp.*, No. 14-cv-8822(JSR), 2015 WL 3650182, at *1 (S.D.N.Y. June 10, 2015) (denying request for temporary restraining order freezing defendants' assets). And while a prima facie case of infringement may give rise to a presumption of irreparable harm, it does not give rise to a presumption that a defendant's cash assets need to be restrained to prevent irreparable harm. *See Bebapci v. Tune Core Inc.,* No. 15-cv-7141 (ENV)(ST), 2016 WL 6804919, at *4 (E.D.N.Y. Nov. 16, 2016).

Here, Plaintiffs have presented no evidence as to Defendant from which this Court should infer that any sales proceeds are in fact being secreted or diverted, or that there is even a possibility that Defendant will divert its sales proceeds prior to the conclusion of this litigation. To the contrary, the sole basis appears to be conclusory allegations that defendants, including Jscout "are located in China" (FAC ¶ 28), "regularly participate in online chatroom discussions involving illegal counterfeiting activities" (FAC ¶ 31), and that they are "likely to secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds." Yamali Decl. ¶ 10. Notably, Plaintiffs have offered no particularized evidence, including chatroom discussions by Defendant, that Jscout was secreting or would transfer funds, or has discussions about counterfeiting activities.

Accordingly, Defendants' foreign status, standing alone, is not sufficient indication of a risk of dissipation, much less irreparable harm, especially where, as here, it has a viable business and has appeared before the tribunal to defend itself. *See, e.g., Klipsch Grp., Inc.*, 2012 WL 5265727, at *11 ("The Court is not persuaded that there is a risk of DealExtreme ceasing its United States operations or radically altering its payment processing system for worldwide sales in its $130 million a year business solely to avoid paying a judgment in this case."); *JSC Foreign*, 295 F. Supp.2d at 390. (declining to find irreparable harm where defendants appeared and were thus "subject to continuing scrutiny in the course of discovery in [the] case" and there was "no suggestion that they would flee or would not be subject to the continuing orders of the Court.").

In this case, roughly 70% of Jscout's sales relate to products that are not the subject of this litigation. Jscout's entire Amazon business is being shut down by the asset freeze, which is endangering Jscout's very existence. Jscout's Amazon sales, which amounted to almost $2 million since 2017, will be zero dollars if the asset freeze remains in effect. Were the Court to lift the asset freeze, Jscout would be able to sell unrelated products.[5] Given the above, Jscout is not at legitimate risk of ceasing its United States operations or sales of products not named in this lawsuit.

In short, as Plaintiffs have not shown irreparable harm in the absence of an asset freeze as against Jscout, and the asset freeze is shutting down Jscout's sales of unrelated products comprising 70% of its revenues, the asset restraining order should be dissolved. *See, e.g., Haggiag v. Brown*, 728 F. Supp. 286, 291 (S.D.N.Y. 1990) (denying asset freeze where plaintiffs failed to present "any significant evidence of any massive dissipation of assets of the sort which

[5] As stated below, there is also no basis for a TRO against sale of the Disputed Product.

would be required in order for the drastic remedy sought by plaintiffs to be appropriate"). As further discussed below, nor do Plaintiffs show irreparable injury on the merits of their Lanham Act and state law claims, as they are wholly without merit.

### *B. Injunctive Relief is not Otherwise Warranted*

Although irreparable injury may be presumed where there is trademark infringement, such injury is **not** presumed on a motion for a TRO in the absence of a showing of a likelihood of success on the merits. *See Salinger v. Colting,* 607 F.3d 68, 78 n.7 (2d Cir. 2010). Thus, the inquiry shifts to whether the plaintiff is likely to succeed on the merits of its Lanham Act claims. Here, Plaintiff has failed to show a likelihood of success on the merits, that the balance of hardships is in its favor, or that the relief it seeks is in the public interest. Accordingly, the TRO should be vacated.

As noted above, consumer confusion is unlikely as the products look nothing alike. Spin Master's car (i) is either red or blue with a large rear spoiler; (ii) uses a gun-shaped control to point a laser at a surface for its car to follow; (iii) is advertised on its external packaging as an Air Hog® brand car; (iv) is primarily described in its user manual as a "Zero Gravity™ Laser" or "Zero Gravity™ Laser Wall Racer." Defendant's car is grey. It has no spoiler. Nor does it use perhaps the most defining feature of the Air Hog: a remote-control gun that shoots a laser beam for the car to follow. Instead, it uses a traditional two joystick infrared remote-control.

Defendant is not using Spin Master's marks in marketing its own product. Defendant's packaging and consumer facing material on Amazon contains no reference to Spin Master, "Air Hogs," "Zero Gravity," or "Wall Climber." Defendant's exterior packaging also does not use the term "Wall Climber." *See* Yamali Dec. Ex. A at 332. Instead, the exterior packaging makes a generalized reference to a "Wall Climbing Car." Such use is an acceptable descriptive use of

generic capabilities of "running on the wall or glass." *See* 15 U.S.C. § 1115(b)(4); *Para Laboratories Inc. v. Better Botanicals Inc.*, No. cv-98-1523, 1998 WL 670239, at *5-6 (E.D.N.Y. May 6, 1998) (finding plaintiff's trademark was merely descriptive and did not grant it a virtual monopoly in using such ordinary descriptive word for his own business use).

The only allegations of ***any*** use by Defendant of Plaintiff's mark appear to be its de minimis reference to Defendant's "Wall Climber Car Use Manual" contained inside the packaging and visible to a consumer well after any purchasing decision is made. Even if such "use" is found to be a sufficient use "in commerce" to sustain a claim under the Lanham Act – which it should not – such use is likewise merely descriptive and in no way confuses or misleads the public that its car is an Air Hogs® brand car manufactured by Spin Master. Again, "the public's right to use descriptive words or images in good faith in their ordinary descriptive sense must prevail over the exclusivity claims of the trademark owner." *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995). Whereas it is well-settled that any resulting confusion to such fair use "was a risk entailed in the selection of a mark with descriptive attributes," *id.* at 270, there can be no consumer confusion when the purchasing decision is made without reference to the descriptive wording in Jscout's owner's manual. Moreover, Plaintiffs do not even appear to be using the mark WALL CLIMBER® in any sense, as a trademark, on product packaging – indeed, as stated above, Plaintiffs' only use of "wall climber" is in a non-trademark, descriptive sense. Consumers identify Plaintiffs' toy car by the "Air Hogs" and "Zero Gravity" marks, which appear on the product packaging and marketing materials – not by the WALL CLIMBER mark, which does not.

C. ***The Public Interest Does Not Favor Continuing the Asset Freeze***

The public interest is not benefited by the imposition of an asset freeze-issued *ex parte* without Defendant having the opportunity to be heard in response to same, where it is not supported by competent evidence against Defendant concerning the risk of dissipation. Defendants have since retained counsel and have now appeared before this Court. Although Defendant believes the claims against them are meritless, there is nothing to suggest they will secret assets or frustrate any potential judgment against them.

### *D. The Balance of Hardships Favors Defendants*

Jscout's business has been brought to a standstill by the TRO and asset freeze. Unless the asset freeze is lifted, Jscout's business could be destroyed. Plaintiff's claims of trademark infringement and counterfeiting, at least as against Jscout, are extremely weak and overreaching. Spin Master lived up to its name in filing misleading papers with the Court, claiming trademark infringement and counterfeiting of a trademark that it does not use, by a foreign competitor that doesn't use it either in any consumer facing marketing or packaging. Spin Master claimed that the remote-control toys at issue are the same – they're not. It's not even close. Spin Master conveniently left out key facts about its laser gun and other differences between the products – even the photographs of its car submitted in the Complaint don't show the hand-held wall laser gun. The hardship to Spin Master of the TRO being lifted is that it will have to face actual competition from at least one competitor who sells a very different product under a different name – in other words, competition.

## II. JSCOUT IS ENTITLED TO AN AWARD OF ITS ATTORNEYS' FEES

As stated above, Spin Master's *ex parte* filing against Jscout was not only extremely weak, but misleading. In this political climate, it's all-too-easy to file a complaint alleging counterfeiting and trademark infringement against 54 Chinese companies, gloss over key facts,

and mislead a Court as to the necessity of the relief requested. For a small Chinese company caught up in an asset freeze, it could well mean the end of its existence. Spin Master's filing abused the system by claiming infringement of a descriptive mark that it doesn't even use, by companies that don't use it to refer to their products – except for descriptively in an owner's manual. There is no possibility of consumer confusion on these facts, much less a likelihood of confusion. Spin Master spun the facts to seem much more favorable, and to support not only the granting of ex parte orders against Chinese companies, but the freezing of their entire Amazon storefront accounts, sweeping up unrelated products and putting these companies in financial jeopardy. Spin Master should, at the very least, be ordered to make Jscout whole for its attorneys' fees.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court dissolve the asset freeze as against Defendant, and award Jscout its attorneys' fees and such other relief as the Court deems proper.

Dated: Brooklyn, New York
September 4, 2019

LEWIS & LIN, LLC

By: /s/ Brett Lewis
David D. Lin, Esq.
Brett Lewis, Esq.
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Email: david@iLawco.com
Telephone: (718) 243-9323
Facsimile: (718) 243-9326

*Attorneys for Defendant*
*Shenzhen Yongli Hongtai Investment*
*Development Co., Ltd., d/b/a Jscout*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2019, I served a copy of the foregoing upon Danielle S. Yamali of Epstein Drangel LLP by e-mail to dfutterman@ipcounselors.com, and that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of New York by using the CM/ECF system, and counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system.

/s/ Brett Lewis___________
Brett Lewis