Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiffs*
*Spin Master Ltd. and Spin Master, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPIN MASTER LTD. and SPIN MASTER, INC., <br><br> *Plaintiffs* <br><br> v. <br><br> ACIPER, ADA TOYZ, AHAHOO, AHIROT, AILA STORE, COLORFULWORLD6, CONTROL FUTURE DIRECT, DEWEER, ELEMUSI, ETCBUYS, FINALBASEDIRECT, FLYGLOBAL, FREE TO FLY, FUNDOM, GOSEAR, GOTECHOD DIRECT, JEICY, JINRONG HE, JJS TOYS, JOYFUN, JOYJAM, JSCOUT, JZD-US, KINGBOT-US, LALAGO, LANKEE, LIBERTY TRADING GB, LYNEE TOYS, MAGNETICSPACE, MAYZO, MI.MENG15, MXTRADE, NAMIGE, NEIL-US, NEW-LOOK, REIMOTKON-US, ROOYA BABY DIRECT, SIKAYE TECH INC, SUUKAA, TABPOLE DIRECT, TAIYUANSHIXINGHUALINGQUWANGYANJUNTIYUYONGPINGDIAN, TOCH DIRECT, TOTOLA TRADING INC, TOY CHEF, TSWA, TULAS, UM-S, UNIDARGON, V-BEST, WALSONTOP, WO FEI, YEYOJOY, YOUDI DIRECT and YUANBO, <br><br> *Defendants* | CIVIL ACTION No. 19-cv-6949-VSB <br><br><br> PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JSCOUT'S MOTION TO DISSOLVE OR MODIFY THE *EX PARTE* TEMPORARY RESTRAINING ORDER |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF RELEVANT FACTS | 2 |
| III. | ARGUMENT | 2 |
| A. | DEFENDANT JSCOUT HAS MADE A MISREPRESENTATION TO THE COURT AND ITS MOTION IS IMPROPER | 2 |
| B. | CONTINUED INJUNCTIVE RELIEF IS NECESSARY AND PROPER | 4 |
| | 1. **Plaintiffs have shown a likelihood of success on the merits** | 4 |
| | 2. **Plaintiffs will suffer irreparable harm if the TRO is not continued** | 8 |
| | 3. **The balance of hardships is in Plaintiffs' favor** | 10 |
| | 4. **The relief is in the public interest** | 11 |
| C. | RESTRAINT OF DEFENDANT JSCOUT'S ASSETS MUST REMAIN IN PLACE | 12 |
| IV. | CONCLUSION | 13 |

# **TABLE OF AUTHORITIES**

**Cases**

*Balenciaga Am., Inc. v. Dollinger*, 2010 U.S. Dist. LEXIS 107733 (S.D.N.Y. 2010) .................. 13

*Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184 (S.D.N.Y. 2016) .......................... 11

*Cadbury Beverages Inc. v. Cott Corp.*, 73 F.3d 474 (2d Cir. 1996) ................................................ 6

*CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011) ........................... 9

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 ......................................................................... 9

*El Greco Leather Products Co. v. Shoe World, Inc.,* 806 F.2d 392 (2d Cir. 1986) .................... 7, 9

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368 (S.D.N.Y. 2010) .................. 5

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1004-1005 (2d Cir. 1997) ......... 6

*Gucci Am. Inc. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014) .................................................... 12

*Ideavillage Products Corp. v. Bling Boutique Store, et al.,* No. 1-16-cv-09039-KMW
     (S.D.N.Y. Nov. 21, 2016) ....................................................................................................... 12

*In re Star Bridge Sys.,* 2001 TTAB LEXIS 833 (T.T.A.B. Dec. 19, 2001) .................................... 8

*In re Ultraflight Inc.*, 221 USPQ 903 (T.T.A.B. 1984) .................................................................. 8

*Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 U.S. Dist. LEXIS 153137 (S.D.N.Y. Oct.
     24, 2012) .................................................................................................................................. 13

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986) ........................ 5

*Mint, Inc. v. Iddi Amad*, No. 10 Civ. 9395 (SAS), 2011 U.S. Dist. LEXIS 49813
     (S.D.N.Y. May 9, 2011) .......................................................................................................... 11

*Mitchell Grp. USA LLC v. Udeh*, No. 14-cv-5745, 2015 U.S. Dist. LEXIS 18801
     (E.D.N.Y. Feb. 17, 2015) .................................................................................................... 9, 11

*Montblanc-Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245 (E.D.N.Y. 2010) ................... 11

*N. Face Apparel Corp. v. TC Fashions, Inc.*, 2006 WL 838993 (S.D.N.Y. Mar. 30, 2006) ........ 12

*NYP Holdings v. New York Post Pub. Inc.*, 63 F. Supp. 3d 328 (S.D.N.Y. 2014) ......................... 9

*Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, 2014 U.S. Dist. LEXIS 112274
     (E.D.N.Y. 2014) ...................................................................................................................... 11

*Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir. 1961) .......................................... 5

*Polymer Technology Corp. v. Mimran*, 975 F.2d 58 (2d Cir. N.Y. 1992) ..................................... 7

*Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970 (Fed. Cir. 1996) .................................................. 10

*Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261 (E.D.N.Y. 2011) ................... 7

*Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d
    201 (E.D.N.Y. 2008) ............................................................................................................. 6

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ............................................................................ 8

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009) ............................. 6

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ........................................................... 5

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515 (S.D.N.Y. 2011); .............. 8

*Virgin Enterprises v. Nawab*, 335 F.3d 141 (2d Cir. 2003) ............................................................ 7

*Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir. 1981) .................................................. 6

*Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009) .................................................. 9, 10

**Statutes**

15 U.S.C. § 1057(b) ....................................................................................................................... 5

15 U.S.C. § 1117(a) ..................................................................................................................... 13

**Other Authorities**

Trademark Manual of Examining Procedure October 2018 Section 904.03(j) ............................. 8

# GLOSSARY

| Term | Definition | Docket Entry Number |
|---|---|---|
| **Plaintiffs or "Spin Master"** | Spin Master Ltd. and Spin Master, Inc. | N/A |
| **Defendants** | ACIPER, Ada Toyz, AHAHOO, AHIROT, AILA Store, Colorfulworld6, Control Future Direct, DEWEER, Elemusi, ETCBUYS, FinalBaseDirect, Flyglobal, Free to Fly, FUNDOM, Gosear, GotechoD Direct, Jeicy, jinrong he, JJs Toys, Joyfun, Joyjam, Jscout, JZD-US, KINGBOT-US, Lalago, lankee, Liberty Trading GB, Lynee toys, Magneticspace, Mayzo, Mi.meng15, MXTRADE, namige, Neil-US, new-look, REIMOTKON-US, ROOYA BABY Direct, Sikaye tech Inc, SUUKAA, tabpole Direct, taiyuanshixinghualingquwangyanjuntiyuyongpingdian, Toch Direct, Totola Trading Inc, Toy Chef, TSWA, Tulas, UM-S, UniDargon, V-Best, Walsontop, Wo Fei, YEYOJOY, Youdi Direct and YuanBo | N/A |
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York | N/A |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiffs | N/A |
| **New York Addresses** | 60 East 42nd Street, Suite 2520, New York, NY 10165; 244 Madison Ave, Suite 411, New York, NY 10016 | N/A |
| **Complaint** | Plaintiffs' Complaint filed on July 25, 2019 | 8 |
| **Application** | Plaintiffs' *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on July 25, 2019 | 10-11, 14-15 |
| **Harrs Dec.** | Declaration of Christopher Harrs in Support of Plaintiffs' Application | 10 |
| **Yamali Dec.** | Declaration of Danielle S. Yamali in Support of | 15 |

| | Plaintiffs' Application | |
|---|---|---|
| **Spin Master Products** | Innovative children's lifestyle products and toys under Plaintiffs' own well-known brands, including Twisty Petz, Flutterbye Fairy, Bunchems and Hatchimals, as well as under their licensed properties, such as Paw Patrol and Air Hogs | N/A |
| **Racer Products** | Plaintiffs' Air Hogs Zero Gravity Laser Racer, which features award-winning patented technology that permits the car to drive along the floor, up the walls, and even upside down | N/A |
| **Racer Product Marks** | U.S. Trademark Registration Numbers: 3,267,725 for "WALL CLIMBER" for goods in Class 28, with a constructive date of first use of May 27, 2005; and 3,210,297 for "ZERO GRAVITY" for goods in Class 28, with a constructive date of first use of June 23, 2005 | N/A |
| **Counterfeit Products** | Products bearing or used in connection with the Racer Product Marks, and/or products in packaging and/or containing labels and/or hang tags and/or manuals bearing the Racer Product Marks, and/or bearing or used in connection with marks that are confusingly similar to the Racer Product Marks and/or products that are identical or confusingly similar to the Racer Products | N/A |
| **Infringing Listings** | Defendants' listings for Counterfeit Products | N/A |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) | N/A |
| **Defendants'** | Any and all financial accounts associated with or | N/A |

| | | |
|---|---|---|
| **Financial Accounts** | utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) | |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants | N/A |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by Amazon, such as Amazon.com, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise | N/A |
| **TRO** | 1) Temporary Restraining Order; 2) Order Restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated and Alternative Service; and 5) Order Authorizing Expedited Discovery entered on August 1, 2019 | 19 |
| **August 16, 2019 Order** | August 16, 2019 Order granting Plaintiffs' request to extend the TRO through October 25, 2019, the date of the show cause hearing | 18 |
| **Amazon's Supplemental Discovery** | On Septermber 9, 2019, for purposes of this litigation and pursuant to the expedited discovery ordered in the TRO, counsel for Amazon provided Plaintiffs with supplemental expedited discovery identifying, inter alia, Defendants' Infringing Listings, Merchant Storefront IDs, total number of sales of Counterfeit Products and gross sales | N/A |
| **Scully Dec.** | Declaration of Brieanne Scully filed in support of Plaintiffs' Opposition to Defendant Jscout's Motion to Dissolve or Modify the *Ex Parte* Temporary Restraining Order | TBD |

Plaintiff Spin Master Ltd. and Plaintiff Spin Master, Inc., by and through their undersigned counsel, respectfully submit this Memorandum of Law in Opposition to Defendant Jscout's Motion to Dissolve or Modify the *Ex Parte* TRO. (Dkts. 20-22.)

## I.   INTRODUCTION

On July 25, 2019, Plaintiffs brought this action against sellers on the e-commerce platform Amazon that were offering for sale and/or selling products that infringed Plaintiffs' valuable registered trademarks covering their popular Racer Products.[1] Plaintiffs moved *ex parte* against all Defendants for an order to seal file, a temporary restraining order, an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions, an order to show cause why a preliminary injunction should not issue, an order authorizing bifurcated and alternative service and an order authorizing expedited discovery. (Dkts. 8, 10-11, 14-15.) On the same day, July 25, 2019, the Hon. Vernon S. Broderick held a hearing on Plaintiffs' Application and thereafter, on August 1, 2019, entered the TRO. (Dkt. 19.) By Order dated August 16, 2019, the Court granted Plaintiffs' request for an extension of the TRO through October 25, 2019, the date of the show cause hearing. (Dkt. 18.)

On September 4, 2019, counsel for Defendant Jscout filed a Motion to Dissolve or Modify the *Ex Parte* TRO. (Dkts. 20-22). For the reasons set forth below, namely the fact that Defendant Jscout has made a misrepresentation to the Court and that Defendant Jscout has infringed and continues to infringe Plaintiffs' Racer Product Marks, Plaintiffs respectfully request the Court deny Defendant Jscout's motion in its entirety.

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

1

## II. STATEMENT OF RELEVANT FACTS

Plaintiffs are part of a large, multinational toy and entertainment company started in 1994 that designs and sells innovative children's lifestyle products and toys under their own well-known brands, including Twisty Petz, Flutterbye Fairy, Bunchems and Hatchimals, as well as under their licensed properties, such as Paw Patrol and Air Hogs. (Dkt. 10 at ¶ 3.) One of Plaintiffs' lines of successful Spin Master Products is their line of toy products marketed under the brand name "Air Hogs." Specifically, one particular Air Hogs product – the Zero Gravity Laser Racer– is extremely successful. *Id.* at ¶ 6. The Racer Product features award-winning patented technology, which permits the car to drive along the floor, up the walls, and even upside down.[2] *Id.* In addition to their "AIR HOGS" and "ZERO GRAVITY" marks, Plaintiffs use their "WALL CLIMBER" mark on the product packaging, product descriptions and their website, among other uses.

Defendant Jscout is a seller on the Amazon online marketplace platform where it offers for sale and sells Counterfeit Products. Plaintiffs' counsel purchased Defendant Jscout's Counterfeit Product and confirmed that Defendant Jscout used Plaintiffs' "WALL CLIMBER" mark. (Scully Dec., ¶ 21.)

## III. ARGUMENT

### A. DEFENDANT JSCOUT HAS MADE A MISREPRESENTATION TO THE COURT AND ITS MOTION IS IMPROPER

Defendant Jscout has made a significant misrepresentation to the Court by asserting that sales for the Counterfeit Product totaled "approximately $546,291, or essentially 30% of Defendant's sales." (Dkt. 21 at ¶ 5-7.) Based on Amazon's Supplemental Discovery, Defendant Jscout's sales are more than double the amount of sales Wang Le attested to in his declaration.

---

[2] In response to fn. 2 of Defendant Jscout's Motion to Dissolve or Modify the *Ex Parte* TRO (Dkt. 22 at fn. 2.): To the contrary, Plaintiffs are the exclusive owner of the patented technology that would enable a remote-controlled car to climb walls. Further, Plaintiffs reserve their right to amend the Compliant to include a patent claim.

2

Amazon's Supplemental Discovery revealed that for ASIN B07FKRY7CK, Defendant Jscout sold, at a minimum, 53,435 Counterfeit Products, which totals $1,289,903.65 in sales. (Scully Dec., ¶¶ 17-19.) Based on the Supplemental Discovery, Jscout's sales of Counterfeit Products account for at least 70% of Defendant Jscout's business. Further, Amazon's Supplemental Discovery production relates exclusively to the Infringing Listing on Jscout's Merchant Storefront Amazon as identified by Plaintiffs. In other words, the discovery produced by Amazon is far from comprehensive insofar as it does not cover additional Infringing Listings or Defendant Jscout's offering for sale and/or sale of Counterfeit Products on other e-commerce platforms or websites. Notably, in his declaration, Wang Le identifies another ASIN (B07KLSB6NZ) for the Counterfeit Product.[3]  (Dkt. 21 at ¶ 4.)  Consequently, it is extremely likely that the number of sales of Counterfeit Products made by Defendant Jscout greatly exceeds the numbers identified in Amazon's Supplemental Discovery.

Further, while Plaintiffs acknowledge that temporary restraining orders should be narrowly tailored, Jscout has failed to establish that a modification of the TRO is warranted.  Significantly, to date, Defendant Jscout has failed to completely comply with the xpedited discovery ordered in the TRO, which is critical to determining the full extent of Defendant Jscout's unlawful behavior.[4] Pursuant to Section V of the TRO, Defendant Jscout should have complied with the Expedited Discovery order by September 2, 2019. (*See* Dkt. 19 at Section V.) To date, Defendant Jscout failed to provide "the name and location and URL of any and all websites that Defendants own and/or operate and the name, location, account numbers and URL for any and all User Accounts and Merchant Storefronts on any Third Party Service Provider platform that Defendants own

---

[3] Currently, Plaintiffs do not have sales information for this particular ASIN, but have provided the newly identified ASIN to counsel for Amazon so Amazon can provide this information.
[4] *See* TRO, Section V(A). (Dkt. 19.)

and/or operate;" or "the complete sales records for any and all sales of Counterfeit Products, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof." *Id.* Defendant Jscout is violation of a court order. Further, Defendant Jscout's failure to provide this information prevents Plaintiffs from determining whether Defendant Jscout sells Counterfeit Products through other potential avenues.

Nevertheless, counsel for Plaintiffs conducted a search for information on Defendant Jscout's Merchant Storefront, which led Plaintiffs' counsel to http://www.epochair.site/, where Counterfeit Products are offered for sale and/or sold ("Epoch Air Website"). (Scully Dec., ¶¶ 8-12, Ex. C-D.) The address on the Epoch Air Website matches the address on, what Plaintiffs belief to be, Defendant Jscout's UK Amazon Merchant Storefront. *Id.* at ¶¶ 13-15. Plaintiffs respectfully submit that it is highly likely that if Defendant Jscout complied with the expedited discovery ordered in the TRO, such information would reveal additional infringing conduct and perhaps manufacturing of the Counterfeit Products. Further, despite Defendant Jscout's argument that it is extremely prejudiced by the continued restraint, to the contrary, it would appear there are other means of distribution and Defendant Jscout has other avenues to conduct its business, such as the Epoch Air Website.

**B.     CONTINUED INJUNCTIVE RELIEF IS NECESSARY AND PROPER**

At the outset, it should be stated that by entering the TRO in the first instance, the Court determined that Plaintiffs successfully established their entitlement for injunctive relief. To date, the circumstances remain unchanged, thus, continued injunctive relief is necessary and proper.

**1. Plaintiffs have shown a likelihood of success on the merits**

In order to establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that

4

defendants' use of plaintiff's marks is likely to cause confusion. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010). As a preliminary matter, the U.S. Trademark Registration certificates submitted in conjunction with Plaintiffs' Application provide *prima facie* evidence of both the validity of the Racer Product Marks as well as Plaintiffs' ownership of the same.  (Dkt. 10 at ¶ 9;) *see also* 15 U.S.C. § 1057(b).  Generally, a proper likelihood of confusion inquiry involves an analysis of the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*,: (1) the strength of the plaintiff's mark; (2) the similarity between the two marks; (3) the competitive proximity of the parties' products in the marketplace; (4) the likelihood that the senior user will bridge the gap, if any, between the products; (5) evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of the defendant's product and (8) the sophistication of the relevant consumer group.  287 F.2d 492, 495 (2d Cir. 1961). Yet, "where counterfeit marks are involved, it is not necessary to conduct the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (internal citations omitted). Instead, "[t]he court need only determine the more fundamental question of whether there are items to be confused in the first place -- that is, whether the items at issue . . . are, in fact, counterfeit and whether [d]efendants sold those items, or offered those items for sale." *Id*. at 383 (internal citations omitted). Regardless, even if a *Polaroid* analysis were necessary, a straightforward application of the test demonstrates that likelihood of confusion exists in this case.

First, Plaintiffs' federal trademark registrations for the Racer Product Marks, which are incontestable, further demonstrate the strength of the same.  (Dkt. 10 at ¶¶ 9-10;) *see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection"). Second,

5

Defendant Jscout has applied the "WALL CLIMBER" mark to its substandard Counterfeit Products; as such, this factor weighs in favor of Plaintiffs. (Scully Dec., ¶ 21.) Only minor differences exist between the Counterfeit Products and the Racer Products, which have no bearing on a finding of likelihood of confusion. *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1004-1005 (2d Cir. 1997) (holding that the test for confusion is "whether they create the same general overall impression such that a consumer who has seen" the authentic product would, when seeing the infringing product, be confused).

Third, in considering the proximity of the products in the market, the concern is "competitive proximity," meaning "whether and to what extent the two products compete with each other." *Cadbury Beverages Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996). Further, where, as here, Defendant Jscout is offering for sale and selling products that are virtually identical in kind, but not in quality to the Racer Products, bearing counterfeit and/or infringing marks in the same class of goods under which Plaintiffs sell their Racer Products, they are already in competitive proximity and there is no "gap" to bridge. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (This factor "is irrelevant . . . where . . . the two products are in direct competition with each other.") Fifth, seeing as Defendant Jscout is offering for sale and/or selling counterfeit versions of the Racer Products under the "WALL CLIMBER" mark, actual confusion can be inferred. *See Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d 201, 206 (E.D.N.Y. 2008) (quoting *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981)) ("To obtain an injunction in a trademark case the plaintiff need show 'only a likelihood of confusion or deception … in order to obtain equitable relief.'").

Sixth, given that Defendant Jscout's choice of mark, which is identical to the "WALL

CLIMBER" mark and used in connection with the offering for sale and/or sale of virtually identical products, it can be presumed that Defendant Jscout intended to trade off of the goodwill and reputation of Plaintiffs, their Racer Products and their Racer Product Marks. Seventh, the Racer Products are manufactured with high quality materials. (Dkt. 10 at ¶ 12.) Plaintiffs have neither authorized Defendant Jscout's use of the "WALL CLIMBER" mark or confusingly similar marks in connection with the Counterfeit Products nor approved or tested Defendants' Counterfeit Products being offered for sale and/or sold under or in connection with the Racer Product Marks and/or confusingly similar marks. *Id.* at ¶ 21. Hence, Defendant Jscout has encroached on Plaintiffs' right to control the quality of the goods manufactured and sold under their Racer Product Marks. *See Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 62 (2d Cir. 1992) (quoting *El Greco Leather Products Co. v. Shoe World, Inc.,* 806 F.2d 392, 395 (2d Cir. 1986), *cert. denied,* 484 U.S. 817 (1987)) ("'One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark . . . the actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain'"). Finally, ordinary "retail customers," (*i.e.,* the consumers of Plaintiffs' and Defendant Jscout's products), "are not expected to exercise the same degree of care as professional buyers, who are expected to have greater powers of discrimination." *Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261, 268-269 (E.D.N.Y. 2011) (citing *Virgin Enterprises v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003) (quoting district court)). Thus, this factor favors Plaintiffs' likelihood of success on the merits.

Notably, Defendant Jscout's argument relies heavily on the fact that Defendant Jscout's use of the "WALL CLIMBER" mark is on the manual and not the Counterfeit Product itself, as if this somehow negates use, however, the law is clear that application of the mark to the manual

must be considered affixation to the goods because printed matter included with the goods function as part of the goods. *See In re Ultraflight Inc.*, 221 USPQ 903, 906 (T.T.A.B. 1984); *see also* Trademark Manual of Examining Procedure October 2018 ("TMEP") Section 904.03(j). Further, "[t]here is no requirement that the mark be visible to a purchaser of goods at the time a sale is consummated." *See In re Star Bridge Sys.,* 2001 TTAB LEXIS 833, at *11 (T.T.A.B. Dec. 19, 2001); *see also* TMEP Section 904.03(j).

### 2. **Plaintiffs will suffer irreparable harm if the TRO is not continued**

Defendant Jscout's infringing activities must continue to be restrained in order to prevent any further harm to Plaintiffs.  Not only do Plaintiffs stand to suffer lost profits as a result of Defendant Jscout's competing substandard Counterfeit Products, but it destroys the inherent value of the "WALL CLIMBER" mark, impairs Plaintiffs' reputation for providing quality products, dilutes Plaintiffs' brand and goodwill and negatively affects Plaintiffs' relationships with their current customers (both retail sellers and ultimate consumers) and their ability to attract new customers.  (Dkt. 10 at ¶ 25.) A search for "wall climber" on Amazon.com tenders a results page which lists the Counterfeit Product on the first row and features it as an Amazon "best seller", which is further evidence of the continued irreparable harm suffered by Plaintiffs. (Scully Dec., ¶ 16, Ex. E.)

While courts may no longer presume irreparable harm upon a finding of infringement (*Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010)), "[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515, 540 (S.D.N.Y. 2011); *see also NYP Holdings v. New York Post Pub. Inc.*, 63 F. Supp. 3d 328, 341

(S.D.N.Y. 2014) ("[A]lthough irreparable harm may not be presumed upon a showing of a likelihood of success, irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . Thus, it will often be the case that a party's demonstration of a likelihood of success on a trademark claim will also show a threat of irreparable harm." (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 393.).

Further, it has also been recognized in this Circuit that irreparable harm sufficient to warrant a preliminary injunction exists where defendant injected counterfeit versions of a plaintiffs' products into the market. *See CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011). Here, Plaintiffs have invested considerable time, money and effort to develop goodwill among customers, and to create instantly recognizable products that have become popular worldwide, and Defendant Jscout has sold, and continues to offer for sale substandard Counterfeit Products that look remarkably similar to the Racer Products and which embody, bear and/or incorporate the "WALL CLIMBER" mark, thereby resulting in lost sales and impairing Plaintiffs' reputation that they have achieved through the considerable time and efforts they expended. (Dkt. 10 at ¶¶ 11-15;) *Mitchell Grp. USA LLC v. Udeh*, No. 14-cv-5745, 2015 U.S. Dist. LEXIS 18801, at *8 (E.D.N.Y. Feb. 17, 2015) (internal citations omitted).

Moreover, if Defendant Jscout's motion is granted, Plaintiffs will be deprived of their fundamental right to control the quality of the goods sold under their "WALL CLIMBER" mark. *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (internal quotation marks omitted) (affirming district court's grant of preliminary injunction) (quoting *El Greco*, 806 F.2d at 395) ("[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark."). A review of Defendant Jscout's Infringing Listing reveals 70+ low customer reviews, with the main

9

concern being quality. (Scully Dec., ¶ 10;) *see also Zino Davidoff SA*, 71 F.3d 244 (holding that irreparable harm is caused to a trademark owner who cannot control the quality of their products because "a higher incidence of substantial sales of counterfeit goods, which are invariably non-conforming and inferior" would "harm [Plaintiffs'] reputation and diminish the value of its trademark."); *see also Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated and is evidence of irreparable harm)).

Also, because Defendant Jscout's substandard Counterfeit Products have only minor differences to Plaintiffs' Racer Products, not only could any injury to consumers that results from such consumers' use of Defendant Jscout's substandard Counterfeit Products be attributed to Plaintiffs, thereby causing irreparable harm to Plaintiffs in the form of unquantifiable lost sales, loss of goodwill and loss of control of their reputation with retailers and consumers, but Plaintiffs would also potentially be exposed to legal liability for any such injury to consumers. (Dkt. 10 at ¶ 25.) Thus, this factor weighs heavily in Plaintiffs' favor.

### 3. The balance of hardships is in Plaintiffs' favor

The balance of hardships unquestionably and overwhelmingly favors Plaintiffs in this case. Here, as described above, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their business, the value, goodwill and reputation built up in and associated with the Racer Product Marks and to their reputation as a result of Defendant Jscout's willful and knowing sales of substandard imitations of the Racer Products. In contrast, should the TRO remain in place, any harm to Defendant Jscout would only be the loss of Defendant Jscout's ability to continue to offer its Counterfeit Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from its illegal and infringing activities. "Indeed, to the extent

defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (quoting *Mint, Inc. v. Iddi Amad*, No. 10 Civ. 9395 (SAS), 2011 U.S. Dist. LEXIS 49813, at *3 (S.D.N.Y. May 9, 2011) (internal quotation marks and citation omitted); *see also Mitchell Group USA LLC*, 2014 U.S. Dist. LEXIS 143001 at *6-7 (citing *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, No. 13-CV-2451 (DLI)(SMG), 2014 U.S. Dist. LEXIS 112274 (E.D.N.Y. 2014) ("Absent an injunction, there will be further erosion of plaintiff's goodwill and reputation. Defendants, on the other hand, will be called upon to do no more than refrain from what they have no right to do in the first place.")).

### 4. The relief is in the public interest

The public interest is served by a TRO, as "the public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin or quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (granting a motion to enjoin the defendant from any further trademark violations); *see also Montblanc-Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010). Here, the public has an interest in being able to rely on the high quality of the Racer Products bearing the Racer Product Marks. Plaintiffs' loss of quality control is particularly concerning in this context, given that the Racer Products are intended for young children and poor-quality Counterfeit Products pose significant health and safety risks to such a vulnerable audience. For example, a review of Defendant Jscout's Infringing Listing reveals 70+ low customer reviews, including some that are particularly concerning given the safety hazards of the Counterfeit Product:

> On March 24, 2019, Amazon customer "Ashley Hearn" posted: "While plugged in to charge, the car melted underneath and started smoking. If we would not have

> been walking in and out of the house, it would have caught fire!"
>
> On August 25, 2019, Amazon customer "amber" posted: "We have had this car for one week! Today thankfully my family was home and able to catch this! The charging wire started a fire and melted!"

(Scully Dec., ¶ 10, Ex. A.) Since Defendant Jscout has willfully and knowingly inserted substandard Counterfeit Products into the marketplace and has made no assurances to cease, the public would benefit from the continued restraining order halting any further sale and distribution of Counterfeit Products.

### C. RESTRAINT OF DEFENDANT JSCOUT'S ASSETS MUST REMAIN IN PLACE

The Second Circuit expressly affirmed the Court's authority to freeze counterfeiters' assets pre-judgment as a matter of equity and "in favor of plaintiffs seeking an accounting against allegedly infringing defendants in Lanham Act cases" – whether such assets are located in the United States or abroad, and "impos[ed] on a defendant the obligation to disclose and return profits." *Gucci Am. Inc. v. Bank of China*, 768 F.3d 122, 131-32, 137-38 (2d Cir. 2014). To lift or alter the asset restraint, the burden is on Defendant Jscout to "present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Ideavillage Products Corp. v. Bling Boutique Store, et al.,* No. 1-16-cv-09039-KMW, Dkt. 9 (S.D.N.Y. Nov. 21, 2016); (citing *N. Face Apparel Corp. v. TC Fashions, Inc*., 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006). Defendant Jscout has not met this burden.

The amount of assets frozen in Defendant Jscout's Amazon account totals $20,340.57. Twenty thousand dollars pales in comparison to Defendant Jscout's 1.2 million dollars in sales of Counterfeit Products. Further, Defendant Jscout has failed to demonstrate that its assets are not the proceeds of counterfeiting activities. As illustrated above, a significant portion of Defendant Jscout's business is the sale of Counterfeit Products. While the Lanham Act provides, "subject to

the principles of *equity*, [that a plaintiff may] recover . . . defendant's profits," 15 U.S.C. § 1117(a) (emphasis added). "The Court therefore has authority to freeze the Individual Defendants' assets insofar as they could be used to satisfy an award of their profits pursuant to Plaintiffs' Lanham Act claims." *Balenciaga Am., Inc. v. Dollinger*, 2010 U.S. Dist. LEXIS 107733, at *23-24 (S.D.N.Y. 2010). Plaintiffs reiterate that the dollar amount is impossible to determine at this time because of a lack of complete sales records from Defendant Jscout. S*ee supra* Section III(A); *see also Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 U.S. Dist. LEXIS 153137, at *12 (S.D.N.Y. Oct. 24, 2012).

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendant Jscout's Motion to Dissolve or Modify the *Ex Parte* TRO and continue the injunctive relief.

Dated: September 11, 2019

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY:   /s/Brieanne Scully
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiffs*
*Spin Master Ltd. and Spin Master, Inc.*

13