UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPIN MASTER LTD. and SPIN MASTER, INC.<br><br>*Plaintiffs,*<br><br>v.<br><br>ACIPER *et al.*<br><br>*Defendants.* | Case No.: 19-cv-6949 |

## MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant Jscout ("Jscout" or "Defendant") by and through their counsel Lewis & Lin, LLC, herein moves to dismiss Plaintiff Spin Master, Inc. and Spin Master, Ltd.'s ("Spin Master" or "Plaintiffs") complaint on the basis of failure to state a cause of action.

## PRELIMINARY STATEMENT

This action is an abusive overreach by Spin Master. Spin Master improperly brought forth claims for trademark infringement and counterfeiting in a case where neither party is using the disputed trademark in commerce *as a trademark*, where no plausible chance of consumer confusion could possibly exist, and where the trademark at issue has been all-but-abandoned. There is no allegation in the pleadings, even accepted as true, that would amount to a claim for which relief might be granted to Spin Master.

The First through Fifth Causes of Action in the Second Amended Complaint ("SCAC") should be dismissed for failing *by their own evidence* to state a claim upon which relief may be

granted.  As a matter of law, the documentary evidence submitted by Spin Master in the form of Exhibits to the SCAC undermines Spin Master's claims and demonstrates the absence of any justiciable case or controversy.  Spin Master's Sixth through Tenth Causes of action should be dismissed either under Fed R. Civ. P. 12(b)(1) for lack of standing or under Fed. R. Civ. P. 12(b)(7) for failure to join a necessary party.  This lawsuit is an egregious and exceptional abuse of the courts and the conventions of trademark and patent law, and as such should be dismissed, with Spin Master bearing the burden of reimbursing Jscout's expenses, and paying damages for unwarranted obstruction with Jscout's Amazon storefront account.

## RELEVANT BACKGROUND

Spin Master filed its Second Amended Complaint (SCAC) on November 19, 2019 ("Complaint") [ECF 83] for numerous claims stemming from an alleged infringement of Spin Master's Trademarks.  According to the SCAC, Spin Master sells a line of toy products marketed under the name "Air Hogs," specifically the "Zero Gravity Laser Racer." See **SCAC ¶** 12.  Spin Master alleges that it owns Trademark Registration No. 3,267,725 for "WALL CLIMBER" in Class 28. **SCAC ¶** 12.

Spin Master alleges that one of Jscout's products, listed on Amazon under Amazon Standard Identification Number (ASIN) numbers: Parent ASIN B07KLSB6NZ and Child ASIN B07FKRY7CK (the **"Disputed Product"**), infringes Spin Master's WALL CLIMBER® trademark, and is a counterfeit of Spin Master's AIR HOGS® car.  The allegedly infringing product is Jscout's "Wall Climbing Car." **Exhibit C-2 to the SCAC** shows images of Jscout's Amazon listings, merchant storefront, cart, order confirmation, the "Wall Climbing Car" products, the packaging, and owner's manual. [ECF 83-4, pp. 320-335].  **Exhibit A to the SCAC** shows images of the current version of Spin Master's Air Hogs Zero Gravity Laser Racer

car, its packaging, and owner's manual. [ECF 83-1].  These Exhibits are incorporated into and made a part of the SCAC.

As actually used in commerce, Spin Master's exterior packaging of the relevant Air Hogs toy car simply indicates a trademark registration only in its "AIR HOGS®" mark and common law rights in its "ZERO GRAVITY™" mark, and otherwise generically describes the car as a "real wall climber" that "chases [a] laser" and "drives on walls [and/or] ceilings**.**" **Ex. A of SCAC at 2-3.**  The Air Hogs instruction guide indicates the packaging includes a "Zero Gravity™ Laser Wall Racer" and a gun-shaped Controller which allows a user to point a laser beam at the ground or a wall which the car will follow.  **Ex. A of SCAC at 5.**  The manual also refers to the car generically as a "wall climber" (*see id.* at bottom of 5) type car and suggests ownership only in its brand of "Zero Gravity™" cars.  *See id.* at 6-8.  Spin Master's authentic Air Hogs cars are either red or blue.  *Id.* at 1, 9.

Spin Master further alleges, in conclusory fashion, that Jscout offers "counterfeit products" through storefronts on Amazon.com that are "substantially indistinguishable" from their own.  **SCAC ¶ 4.**  Spin Master alleges Jscout's "Epoch Air remote control car" offered through its Amazon.com storefront is such a "counterfeit" product.  Notably, nowhere in the product description's heading does Jscout indicate its car is manufactured by Spin Master, is an AIR HOGS® brand car, or that it is a ZERO GRAVITY™ or "WALL CLIMBER" brand car.  Rather, Jscout's store accurately describes the product as a remote-control car with a "wall climbing dual mode" and a "360º Rotating Stunt" that would be a suitable Christmas gift for children.

Spin Master's self-serving claims are contradicted by the very screenshots and photographs of product packaging submitted by Spin Master as evidence of infringement.  Those

documents belie the assertion that the Jscout car is a counterfeit copy of Spin Master's recently-launched Air Hogs car.  The Jscout car is grey and black, is stylistically different, has working lights, and uses a handheld remote control, among other differences.  Indeed, there is no allegation that Spin Master was even selling the current model of the Air Hogs wall climbing car prior to Jscout selling its toy car, which it started selling in 2017.

Spin Master's trademark argument boils down to this:   that the use of the generic phrase "Wall Climber Car Use Manual"—contained inside the packaging and visible to a consumer only *after* purchase—constitutes both counterfeiting and infringement of its "WALL CLIMBER" mark.  As a matter of law, this argument fails.

The SCAC also purports to assert claims for patent infringement.  These claims fail for lack of standing, or under Fed. R. Civ. P. 12(b)(7) for failure to join a necessary party.

## ARGUMENT

### A. LEGAL STANDARDS

#### I. Rule 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is warranted for failure to state a claim if there are not "enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When considering a Rule 12(b)(6) motion, a court must treat all of the well pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the nonmoving party. *ATSI Common's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, the Court need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *See Luce v. Edelstein*,

802 F.2d 49, 54 (2d Cir. 1986).  To avoid dismissal under Rule 12(b)(6), a complaint must either contain direct or inferential allegations with respect to all material elements of the claim.

Where a complaint contains no more than "naked assertions devoid of further factual enhancement," or the allegations demonstrate only an, "unadorned, the defendant has harmed me accusation," then it fails to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)(citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. *(citing Twombly*, 550 U.S. at 555).  In this case, Spin Master has made such "threadbare" allegations and conclusory statements without stating a claim that is remotely plausible, and, as such, the SCAC should be dismissed.

Under the Federal Rules of Civil Procedure, "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c).  Relying on Rule 10(c), the Second Circuit has "held that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Coretec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991) (citations omitted).  It is equally true that where allegations are contradicted by documents attached to the pleadings, the documents control. *Feick v. Fleener, 653 F.2d 69, 75 & n. 4 (2d Cir. 1981); Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("if a plaintiff's allegations are contradicted by a document considered in determining a Rule 12(b)(6) motion, those allegations are insufficient to defeat the motion").  In other words, "when documents contain statements that contradict the allegations in the complaint, *the documents control* and the court need not accept as true the allegations contained in the complaint." Rapoport v. Asia Electronics Holding Co., 88 F.Supp.2d 179, 184 (S.D.N.Y.2000)(emphasis added)(citations omitted).

Here, Spin Master has alleged ownership of a valid trademark, and alleges that Jscout has used the trademark in commerce, without consent, such that a likelihood of consumer confusion exists as to the source, sponsorship or affiliation of Jscout's goods.  These allegations, however, are contradicted by Spin Master's own exhibits, and amount to nothing more than "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)(quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955).  As such, the SCAC should be dismissed and Spin Master should bear the burden of reimbursing Jscout's expenses and paying damages for an exceptional and unwarranted obstruction of Jscout's Amazon storefront account.

## II. THE SCAC FAILS TO MEET THE GOVERNING STANDARDS

### i. Spin Master's claim of trademark counterfeiting, trademark infringement, false designation of origin, passing off, unfair competition, and unjust enrichment must be dismissed.

Spin Master's claims of trademark counterfeiting, trademark infringement, false designation of origin, passing off, unfair competition, and unjust enrichment fail to state a cause of action. Under Section 32(1)(a) of the Lanham Act, a claim arises when without the consent of the registrant, any person shall "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake." 15 U.S.C. 1114 (32)(1)(a).   To prevail, Spin Master must show that: (1) it owns a valid, protectable trademark; (2) Jscout used Spin Master's trademark in commerce and without consent, in a way that (3) would likely cause confusion among relevant consumers. *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith*

*Corp.,* 991 F.2d 1072, 1074 (2d Cir. 1993); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 153 (E.D.N.Y. 2016).  Spin Master has utterly failed to properly allege any element of this claim.

      **a.**      **Spin Master fails to show that it owns a valid, protectable trademark.**

As to the first inquiry, Spin Master has established that it owns a trademark registration for WALL CLIMBER, USPTO Reg. No. 3,267,725. [ECF 83-2].  Normally, this would be enough. Spin Master's own evidence, however, contradicts its naked assertion that the WALL CLIMBER mark is *in use* in commerce.  Nowhere on the packaging, advertising or even owner's manual for the AIR HOGS® Zero Gravity® laser car are the words "wall climber" used as a trademark. [ECF 83-1].

It is not necessary at this time to decide whether Spin Master has abandoned its mark. For purposes of a trademark infringement inquiry, it weighs on the first factor, and certainly the third, that Spin Master does not make active use of the very trademark it claims is being infringed.  Spin Master's only current use of "wall climber" is in a non-trademark, descriptive sense.  On its packaging, Spin Master identifies its car with a stylized AIR HOGS® logo and calls its product a ZERO GRAVITY™ LASER car in large font.  Spin Master further describes its car, in extremely small and generic font on the lower part of the box as a "real wall climber." That phrase is without trademark attribution. [ECF 83-1, at 2].

Inside its user manual, Spin Master displays a different, stylized AIR HOGS® logo and uniformly brands its car with its Zero Gravity™ Laser mark, and otherwise uses terms including "wall climber" and "wall racer" interchangeably as descriptive terms to describe the "Zero Gravity™ Laser" car.  *Id.* [ECF 83-1, at 5-8].  These are not trademark uses, with stylized

lettering and proper attribution – they are descriptive uses, and cannot, therefore, support a claim of trademark use.  It is well settled that descriptive fair use of a trademark cannot give rise to a cause of action for trademark infringement.  *See Star Indus., Inc. v. Bacardi & Co.,* 412 F.3d 373, 382 (2d Cir. 2005); *Para Laboratories Inc. v. Better Botanicals Inc.*, No. cv-98-1523, 1998 WL 670239, at *5-6 (E.D.N.Y. May 6, 1998) (finding plaintiff's trademark was merely descriptive and did not grant it a virtual monopoly in using such ordinary descriptive word for his own business use).  Given the contradictory evidence attached to the SCAC, there is no plausible allegation that Spin Master now or previously within the past three years used WALL CLIMBER in commerce as a source identifier.

Moreover, Spin Master markets its wall-climbing toy cars under the Air Hog® Zero Gravity™ brand, not the WALL CLIMBER mark.  It follows that consumers identify Spin Master's toy car by the "Air Hogs" and "Zero Gravity" marks, which appear prominently on the product packaging and marketing materials.  *See* Dessert Beauty, Inc. v. Fox, 568 F. Supp. 2d 416, 426 (S.D.N.Y. 2008), aff'd, 329 F. App'x 333 (2d Cir. 2009); 15 U.S.C. § 1115(b)(4).

Nevertheless, Spin Master claims that the WALL CLIMBER® mark is "incontestable." "Incontestability" merely means that the mark cannot be challenged on the basis of descriptiveness, among other bases.  *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993).  It does *not* mean the mark cannot have been abandoned.  More to the point, incontestability does not make up for a deficiency in Spin Master's pleading on the issue of trademark use in commerce, *where such use does not, by Spin Master's own evidence and pleadings, exist.*

**b.      Spin Master fails plausibly to allege that defendant Jscout uses the WALL CLIMBER trademark in commerce.**

As stated above, in order to have a viable claim under the Lanham Act, Spin Master must plead that Jscout used its trademark in commerce. *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.,* 991 F.2d 1072, 1074 (2d Cir. 1993); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 153 (E.D.N.Y. 2016). Accepting Spin Master's SCAC as true, there is no plausible allegation that Jscout is using the WALL CLIMBER mark – or any Spin Master mark – in connection with the marketing or sale of the Epochair wall climbing car. Jscout's packaging and consumer facing materials on Amazon contain no reference to Spin Master, "Air Hogs," "Zero Gravity," or "Wall Climber." [ECF 83-4, at 320-335]. Jscout's exterior packaging also does not use the term "Wall Climber." *Id.* Instead, the exterior packaging makes a generalized reference to a "Wall Climbing Car." Such use is an acceptable descriptive use of the EpochAir remote control car's capabilities, i.e., of "running on the wall or glass." *See* 15 U.S.C. § 1115(b)(4); *Car Freshener Corp. v. S.C. Johnson & Son, Inc.*, 70 F. 3d 267 (2d Cir. 1995) (reversing district court's grant of summary judgment to plaintiff on fair use and granting summary judgment to defendant).

The sole use of "Wall Climber" by Jscout comes in the phrase, "Wall Climber Car," in the user's manual, inside the product packaging, and not accessible to a consumer until after purchase and opening of the box. *See* SCAC, Exhibit C2. Such a *de minimis* use, not visible at all to a potential consumer, quite simply does not constitute a use in commerce of Spin Master's WALL CLIMBER mark, by any stretch of the imagination.

Even if the Court were to find that "Wall Climber Car" could, in theory, function as a trademark – Jscout's use of Wall Climber Car is not a trademark use, nor is it a use *in commerce*.

Jscout's usage of "Wall Climber Car" in its User Manual to describe its product is a descriptive fair use. *See Car Freshener Corp. v. S.C. Johnson & Son, Inc.*, 70 F. 3d 267 (2d Cir. 1995) ("It is a fundamental principle marking an outer boundary of the trademark monopoly that, although trademark rights may be acquired in a word or image with descriptive qualities, the acquisition of such rights will not prevent others from using the word or image in good faith in its descriptive sense, and not as a trademark.")(citations omitted).

"Wall Climber Car" is interchangeable with "Wall Climbing Car," and merely describes the main feature of Jscout's toy car: it climbs walls. It is well-settled that, "[t]he public's right to use descriptive words or images in good faith in their ordinary descriptive sense must prevail over the exclusivity claims of the trademark owner." *Id. at* 269. Courts in this Circuit have long recognized that any resulting confusion to such fair use, "was a risk entailed in the selection of a mark with descriptive attributes." *Id.* at 270. Realistically, there are a limited number of words to describe a certain type of toy car that can climb up walls, and Spin Master bears the burden of having chosen a highly descriptive phrase as its trademark. Jscout's uses are clearly descriptive – "wall climbing" and "wall climber" being the most obvious and efficacious way to refer to a toy that climbs walls. Spin Master "cannot monopolize words" used descriptively here or expect Jscout "to use unwieldy or long terms" to describe their products. *Dessert Beauty, Inc.*, 568 F. Supp. 2d at 426.

Similarly, where descriptive words are used on product packaging alongside conspicuously visible trademarks, such use is not a trademark use. In *Dessert Beauty, Inc.*, a perfume manufacturer sought a declaratory judgment that its use of "love potion" did not violate a competitor's trademark. *See Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 426 (S.D.N.Y. 2008), aff'd, 329 F. App'x 333 (2d Cir. 2009); 15 U.S.C. § 1115(b)(4). The competitor used the

generic phrase, "love potion," on its' DESSERT brand of perfume, placing a TM symbol only next to the term "Dessert" and not next to the words "love potion." The court noted, "words on a product's packaging generally do not serve as a trademark where there is also a conspicuously visible trademark that clearly serves that function" and found that because the competitor used "love potion" "not to describe the source of the product but as a product name in a generic, descriptive sense, the use was not trademark use." *Id.* at 424. The court also found that the competitor's display of its own name in conjunction with the "love potion" mark it allegedly infringed lessened any likelihood of confusion and could only show that such efforts were made in good faith to differentiate its products in the marketplace rather than to trade on the mark holder's good will.

The same can be said of Jscout's use of the descriptive words "wall climber car" here. Jscout identifies its car as being manufactured by EpochAir – not Spin Master – makes no use of the Air Hogs® or Zero Gravity™ marks, and makes only a limited and fair use of the words "wall climber car" in its owner's manual to describe the product's capabilities. On the box for Jscout's toy car, the mark EpochAir, is conspicuously displayed on the front and back of the packaging in three places. The descriptive words "Wall Climbing Car" also appear three times on the outside of the packaging, and "Wall Climber Car USE MANUAL" appears inside the box on the owner's manual. It is clear that here, as in the *Dessert Beauty* case, "words on a product's packaging [] do not serve as a trademark where there is also a conspicuously visible trademark that clearly serves that function." *Id.* at 424 (use of "love potion" as a product name in a generic, descriptive sense was not a trademark use).[1]

---

[1] It's worth noting that Spin Master also uses its core Air Hogs® and Zero Gravity™ marks conspicuously to describe the source of its product, and only uses "wall climber car" in a non-

### iv. Spin Master fails to demonstrate any possible likelihood of confusion.

In order to survive a motion to dismiss, Spin Master must also sufficiently allege consumer confusion resulting from an alleged trademark use.  It is beyond cavil that such confusion **must** occur in relation to a consumer's purchasing decision. *See Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 582-83 (2d Cir. 1991)( "Trademark infringement only protects against mistaken **purchasing decisions** and not against confusion generally.")(emphasis added); *Medici Classics Productions, LLC. V. Medici Group, LLC*, 590 F. Supp. 2d 548 (SDNY 2008).  The confusion alleged cannot refer to confusion generally.  *Lang at 582-83.*  It must be in connection with a purchasing decision. *Id.* ("The Lanham Act seeks to prevent consumer confusion that enables a seller to pass "off his goods as the goods of another.")(citations omitted).  Confusion occurs where "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993).

Here, there is no plausible theory of confusion alleged or supported by Spin Master's pleadings.  Confusion cannot arise based on the appearance of the two competing products, for they look nothing alike.  Spin Master may insist that the cars are "virtually identical," but that is easily undermined by the evidence provided.  Spin Master's car (i) is either red or blue with a large rear spoiler; (ii) uses a gun-shaped control to point a laser at a surface for its car to follow; (iii) is advertised on its external packaging as an Air Hog® brand car; (iv) is primarily described

---

trademark, generic and descriptive sense.  *See Am. Express Co. v. Goetz*, 515 F.3d 156, 159 (2d Cir. 2008) (holding that a mark that does not perform the role of identifying a source is not a trademark.).

in its user manual as a "Zero Gravity™ Laser" or "Zero Gravity™ Laser Wall Racer."  Jscout's car is visually different, is grey and black, has working headlights, and has neither the spoiler nor the most defining feature of the Air Hog: a remote-control gun that shoots a laser beam for the car to follow. Instead, it uses a traditional two joystick infrared remote-control.  In short, they are obviously dissimilar and distinguishable to the naked eye, and impossible to confuse.

Moreover, confusion cannot arise from a use of the alleged trademark in commerce because the trademark is not being used in commerce.  In **Exhibit C-2,** the only piece of evidence that displays any use whatsoever of the words, "Wall Climber," is on the cover of the Owner's manual. [ECF 83-4, at 320-335].  The term does not appear anywhere on Jscout's storefront or anywhere a consumer may see **prior to making a purchasing decision**.  Nowhere in Jscout's advertising or product packaging does Jscout claim that the trademark for its toy car is WALL CLIMBER.  Jscout did not so much as allude to Spin Master or its associated trademarks.  Jscout never used "wall climber" in any exterior packaging or suggested its car was an Air Hogs® or Zero Gravity™ Laser brand.

In fact, the marks under which Jscout is trading are obviously *not* any owned by Spin Master.  In the user manual, the EpochAir mark is prominently displayed.  The introductory description of the product refers to Jscout's toy car as the "EpochAir Wall Climbing Car."  It's clear from the context of the product packaging and user manual, that the sole reference to a "Wall Climber Car USE MANUAL" is not a trademark use.  Rather, EpochAir is being conspicuously claimed as the trademark.  The term "wall climbing car" is used descriptively to communicate the same attributes described by "wall climber car." Nowhere is Jscout's toy car being branded as the "WALL CLIMBER."

By Spin Master's own allegations and evidence, the only use alleged of the term "Wall Climber" by Jscout was in the internal owner's manual. There is neither allegation nor evidence suggesting Jscout has otherwise used the mark in commerce on the packaging, marketing materials, or on the product itself. By virtue of the owner's manual being inside the box, it is impossible that the use of the term would have any bearing on the *purchasing decision* of the consumer, or have any bearing on indicating the source, sponsorship, affiliation, connection, or identification of the product, because no consumer would encounter the product's instruction manual before purchasing and opening the item. It is not marketing material, as was the case in *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. V. Steinway and Sons,* 523 F.2d. 1331 (2d Cir. 1975).

Spin Master, nevertheless, asserts that the consumer confusion necessary for a finding of trademark infringement can be post-sale confusion. Spin Master's argument turns the law on its head. As stated above, the general rule is that for there to be a likelihood of confusion, there must be confusion in a purchasing decision. In a narrow class of cases involving high-end and high-status counterfeit goods, the courts have held that post-sale confusion may occur. However, these cases concern the kind of knock-off counterfeit good purchased "for the purpose of acquiring the prestige gained by displaying what many visitors at the customers' homes would regard as a prestigious article." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 108 (2d Cir. 2000). The toy wall climbing car at issue is A) not a counterfeit copy, and B) not a counterfeit Louis Vuitton bag or Rolex watch, the kinds of products that notions of post-sale confusion contemplate[2]. The combined visual dissimilarity between Spin Master's and Jscout's

---

[2] Thus when wearing apparel is displayed in public after sale, without the distinguishing indicia present at the point of sale, such as packaging, labels,2 and tags, the test of likelihood of confusion should be made under such post- sale conditions. § 3:9.Likelihood of confusion—Post-sale confusion, 1 Federal Unfair Competition: Lanham Act 43(a) § 3:9

products, the fact that no consumer seeks out toy remote control cars as status symbols to show off to their friends, and the absence of any use of Spin Master's trademarks on the EpochAir wall climbing toy car give the lie to Spin Master's post-sale confusion argument.

Beyond failing to state a claim, Jscout has incurred extensive legal fees and suffered substantial loss of sales as this matter has been ongoing, for a claim that is, was, and has always been meritless.  Spin Master has sought to destroy Jscout as a competitor in the marketplace by engaging in protracted and abusive litigation, supported by profoundly meritless claims and erroneous and misleading assertions of fact and law, filed on an emergency basis.  As such, Spin Master should bear the burden of reimbursing Jscout's expenses and paying damages for unwarranted obstruction with Jscout's Amazon storefront account.

### ii. Spin Master's patent infringement claims fail for lack of standing

Spin Master is neither the owner nor the exclusive licensee of a substantial interest in any of U.S. Patents  7,753,755, 7,980,916, 8,979,609, 9,675,897, and 10,398,995 (collectively "the 'asserted patents") thus either lacks standing to sue under any of the asserted patents or requires the patent owners to be joined in order to proceed with the lawsuit.  Turning first to the standing matter, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Accordingly, Rule 12(b)(1) is the proper procedural vehicle for challenges to a plaintiffs standing to sue. *Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006).

Constitutional standing to assert an infringement claim is grounded in the Patent Act, which provides that "a patentee shall have remedy by civil action for infringement of his patent."

35 U.S.C. § 281. The term "patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." Id. § 100(d). Here, Spin Master has provided no allegation that any of the asserted patents have been assigned from their original inventors to Spin Master. Therefore, the patentees are Leonard Clark, Jr. and H. Peter Greene, Jr. because those individuals are listed as inventors on the patents and their rights have not been assigned.

Spin Master does not allege it is a patent owner, but rather that it "is the exclusive licensee to all the rights and interests" of the asserted patents. (2AC, ¶¶6, 53, 104, 114, 124, 134, and 144). There are three different kinds of licensees to a patent. First, an exclusive licensee in receipt of "all substantial rights" in the patent, rendering the license "tantamount to an assignment," the licensee is treated as the effective patentee for standing purposes and may bring suit in its own name. Alfred E. Mann Found. for Scientific Research v. Cochlear Corp., 604 F.3d 1354, 1359 (Fed. Cir. 2010). Second, an exclusive licensee that possesses exclusionary rights, but less than all substantial rights, has constitutional standing to sue but may not do so without joinder of the patentee as a necessary party. Id at 1359-60. Third, non-exclusive licensees lack exclusionary rights and standing to sue with or without the patentee. *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) ("A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement."

As the party "seeking to invoke the subject matter jurisdiction of the . . . court," the plaintiff bears the burden of demonstrating the court's jurisdiction over its claim. *Scelsa v. City Univ. of N.Y.*, 76 F.3d 37, 40 (2d Cir. 1996). In deciding a motion to dismiss pursuant to Rule 12(b)(1), a "court may resolve the disputed jurisdictional facts by referring to evidence outside

the pleadings, such as affidavits." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

Relevantly, Counsel for Spin Master has produced a license agreement dated August 8, 2004, attached hereto as Jscout's Exhibit A.  That agreement transferred the following rights from the patentee to Spin Master: the exclusive right to make, use, and sell one version of a wall racing car worldwide which uses the technology that relates to the asserted patents(Id. at ¶ 1); the right to select countries outside of the United States to obtain patent protection (Id. at ¶ 11); and the right of first refusal to initiate litigation against third part infringers (Id. at ¶ 18).  The inventors have: the right to obtain, prosecute and maintain the asserted patents in the United States (Id. at ¶ 11); the right to sell locate other licensees for a "radial" venturi system that uses the technology that relates to the asserted patents (Id. at ¶ 30); and the right to initiate litigation against third party infringers if Spin Master elects not to initiate litigation (Id. at ¶ 18).  The agreement expires twelve months after Spin Master stops selling wall racing cars. (Id. at ¶ 13).

A. **Spin Master has a non-exclusive license and thus has no standing to sue.**

Spin Master is not an exclusive licensee, because the patentees still have the right to allow others to use the technology in the asserted patents.  While the license is termed an "exclusive license" in the complaint, an exclusive license requires "the exclusive right to make, use, or vend the invention." *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 469 (1926).  Spin Master does not have such a right.  Spin Master has a right to make one version of a wall racing car, while the patentees have a right to make another version themselves or to have someone else make that version.  Where two or more parties share the rights to make use and vend certain technology the license is non-exclusive because the parties that share rights cannot exclude one another.  The Supreme Court and Federal Circuit have made clear that parties with

the mere right to sue on a patent — cleaved from the right to exclude — are non-exclusive licensees. *Crown Die & Tool v. Nye Tool & Mach. Works*, 261 U.S. 24, 42 (1923); *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1341-42 (Fed. Cir. 2007) (no standing where party had exclusive right to sue, but no exclusionary rights); *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) (no standing where party had exclusive right to sue, and grant and enforce licenses, but lacked sufficient exclusionary rights); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1034 (Fed. Cir. 1995) (no standing where party had right to sue and non-exclusive license to practice the patent). Since the license agreement gives the inventors the ability to delegate a license to others, the license is non-exclusive and Spin Master lacks standing to sue.

Additionally, Spin Master has not pleaded that it has continuously sold wall climbing cars since May 2006. Ceasing sales of wall climbing cars for 12 months terminates the license. Ex. A at 7. Spin Master has not pleaded that a subsequent agreement was in writing. *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("While we acknowledge that a license may be written, verbal, or implied, if the license is to be considered a virtual assignment to assert standing, it must be in writing.") The lack of a valid written license at the time Spin Master filed suit would deprive Spin Master does of standing for this reason as well. Spin Master carries the burden of proving it has standing in the first instance, and the lack of evidence in support of this results in dismissal.

    **B. <u>Alternately, Spin Master has failed to join necessary parties and the case should be dismissed.</u>**

As a matter of judicial prudence, a patentee that has transferred some but not all substantial rights retains constitutional standing to sue but may be required to join its exclusive

licensee. These prudential constraints are governed by Fed. R. Civ. P. 19 and center on two concerns: first, that a patent could be invalidated in a suit brought by a lesser rights holder without the patentee's involvement, and second, that alleged infringers could be exposed to multiple suits arising out of the same patent.

As noted above, the rights that Spin Master has are to sue in the first instance and to make one variant of a toy car. At any point in this litigation, perhaps after an unfavorable ruling, Spin Master could decide to dismiss the case, only to have the patentees restart the case anew in the Federal Courts in Pennsylvania. The prudential necessity of having all rightsholders joined in a single action in order for a court's rulings to have preclusive effects were the exact facts of *Alfred E. Mann Found. for Scientific Research*, 604 F.3d at 1359. If the case cannot be dismissed to have the patentee bring its own suit (if it so desires) then the patentee should at least be involved in the suit's resolution.

## **CONCLUSION**

In light of the foregoing, Jscout respectfully requests that the Court issue an order dismissing the Complaint in its entirety as set forth above, award Jscout its attorneys' fees, Spin Master bearing the burden of reimbursing Jscout's expenses and paying damages for unwarranted obstruction with Jscout's Amazon storefront account, and grant further relief as may be just proper, and equitable.

LEWIS & LIN, LLC

By: */s/ Brett E Lewis*_____
David D. Lin, Esq.
Brett Lewis, Esq.
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Email: david@iLawco.com

brett@iLawco.com
Telephone: (718) 243-9323
Facsimile: (718) 243-9326

*Attorneys for Defendant*
*Shenzhen Yongli Hongtai Investment*
*Development Co., Ltd., d/b/a Jscout*