```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
SPIN MASTER, et al.,                                        :
                                                            :
                              Plaintiffs,                   :
                                                            :       19-CV-6949 (VSB)
              -against-                                     :
                                                            :       OPINION & ORDER
ACIPER, et al.,                                             :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X
```

Appearances:

Jason M. Drangel
Brieanne Scully
Danielle Yamali
Epstein Drangel LLP
New York, New York
*Counsel for Plaintiffs*

Brett Lewis
Lewis & Lin LLC
Brooklyn, New York
*Counsel for Defendant Jscout*

VERNON S. BRODERICK, United States District Judge:

Before me is Plaintiffs' request for a preliminary injunction, including the continued restraint of certain assets belonging to Defendant Jscout. (Doc. 70; *see also* Docs. 11, 26.) Because Plaintiffs have failed to show they would suffer irreparable harm in the absence of the relief they seek, Plaintiffs' request is DENIED.

I. **Factual Background**[1]

Plaintiffs are corporations that are part of a large toy and entertainment company that manufactures, among other things, a line of remotely controlled toy cars and marketed under the brand name "Air Hogs," including a model called the "Zero Gravity Laser Racer." (Harrs Dec. ¶¶ 3, 6; Harrs Dec. Ex. A.)[2]  These cars use "patented technology" to drive along the floor, up walls and upside down. (*Id.* ¶ 6.)  In connection with this line of products, Plaintiffs have federally registered the trademarks "WALL CLIMBER" and "ZERO GRAVITY" (together, the "Marks") for goods in Trademark Class 28, (*id.* ¶ 9), which encompasses toys and sporting goods, *see* Trademark Manual of Examining Procedure Oct. 2018 § 1401.02(a).  Defendants are merchants who, through the e-commerce website Amazon.com, sell products that Plaintiffs allege are counterfeits of their Zero Gravity Laser Racers and infringe on Plaintiffs' trademarks. (Yamali Dec. ¶ 12; Harrs Dec. ¶ 20.)[3]  In particular, at the time the complaint and amended complaint were filed, Defendant Jscout sold a toy car called the "Epoch Air Wall Climbing Car," ("Epoch Air Car") whose packaging contained a manual entitled "Wall Climber Car." (FAC ¶ 37; *id.* Ex. C, at 320–335; Scully Dec. ¶ 20–21.)[4]  Jscout and the other Defendants are located in

---

[1] The facts set forth in this section are based primarily upon the various submissions by the parties filed in connection with Plaintiffs' motion for a preliminary injunction, including declarations and exhibits, and representations by counsel at the preliminary injunction hearing.  Although Plaintiffs filed a Second Amended Complaint on November 19, 2019, I do not consider the allegations contained therein for the purposes of this Opinion & Order, because it was not before me at the time of that preliminary injunction hearing.

[2] "Harrs Dec." refers to the Declaration of Christopher Harrs and Accompanying Exhibits In Support of Plaintiffs' Ex Parte Application For: 1) Temporary Restraining Order; 2) An Order Restraining Merchant Storefronts And Defendants' Assets With the Financial Institutions; 3) An Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated Alternative Service and 5) Order Authorizing Expedited Discovery, dated July 18, 2019 and filed on the public docket on August 27, 2019.  (Doc. 10.)

[3] "Yamali Dec." refers to the Declaration of Danielle S. Yamali and Accompanying Exhibits In Support of Plaintiffs' Ex Parte Application For: 1) Temporary Restraining Order; 2) An Order Restraining Merchant Storefronts And Defendants' Assets With the Financial Institutions; 3) An Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated Alternative Service and 5) Order Authorizing Expedited Discovery, dated July 18, 2019 and filed on the public docket on August 27, 2019.  (Doc. 15.)

[4] "FAC" refers to Plaintiffs' first Amended Complaint, filed on August 27, 2019.  (Doc. 16.)  "Scully Dec." refers to

China, (FAC ¶ 25), and sell to customers in the United States, including New York, (*id.* ¶ 28–29).  Customer payments for Amazon orders flow to Jscout through Amazon's online payment service, Amazon Pay, and external payment processing companies PayPal and PingPong.  (*See* Pls.' Asset Freeze Mem. 3 n.2.)[5]

## II. Procedural History

Plaintiffs commenced this action on July 25, 2019 by requesting leave to file under seal their complaint, (Docs. 2, 8), and a request for an ex parte temporary restraining order with supporting declarations, exhibits, and memorandum of law, (Docs. 10, 11, 14, 15).  Judge Paul A. Engelmayer, presiding in Part I, granted the request to file under seal, (Docs. 1, 6), and I heard the substance of Plaintiff's ex parte application that same day.  Shortly thereafter, on July 30, 2019, Plaintiffs filed an amended complaint, which was substantially identical to the initial complaint but for the addition of one defendant.  (*See* Doc. 16.)  On August 1, 2019, based on the materials and arguments then before me, I issued a modified version of Plaintiffs' proposed temporary restraining order.  (*See generally* TRO.)[6]  This order enjoined Defendants from selling or marketing any products bearing Plaintiffs' Marks, restrained Defendants' merchant storefronts on Amazon, and directed the payment processing providers to freeze any of Defendants' assets contained in an account hosted by them.  The order also authorized Plaintiffs to seek expedited discovery, including from the payment processing providers; directed Plaintiffs to place a bond

---

the Declaration of Brieanne Scully and Accompanying Exhibits in Support of Plaintiffs' Opposition to Defendant Jscout's Motion to Dissolve or Modify the Ex Parte Temporary Restraining Order, filed on September 11, 2019.  (Doc. 27.)

[5] "Pls.' Asset Freeze Mem." refers to Plaintiffs' Memorandum of Law in Support of Their Request to Continue The Freeze On Jscout's Assets, Or, In The Alternative To Require Jscout To Post A Bond, filed on November 1, 2019.  (Doc. 70.)

[6] "TRO" refers to the 1) Temporary Restraining Order; 2) An Order Restraining Merchant Storefronts And Defendants' Assets With the Financial Institutions; 3) An Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated Alternative Service and 5) Order Authorizing Expedited Discovery, issued on August 1, 2019.  (Doc. 19.)

with the Court in the amount of $25,000; and scheduled a hearing for Plaintiff's motion for a preliminary injunction for October 25, 2019. (*Id.*) Pursuant to Federal Rule of Civil Procedure 65(b)(2), the TRO expired on August 15, 2019, and on August 16, 2019, Judge Jed S. Rakoff, presiding in Part I, issued an order extending the TRO through the date of the preliminary injunction hearing. (Doc. 18.) That order also granted leave to Defendants to seek an earlier hearing date if they wished to do so. (*Id.*)

At Plaintiffs' request, the action was unsealed on August 27, 2019, (Doc. 5), and all documents filed in the case were filed on the public docket, including Plaintiffs' complaint and exhibits, (Doc. 8); amended complaint and exhibits, (Doc. 16); proposed temporary restraining order, (Doc. 14); memorandum of law in support of the temporary restraining order, (Doc. 11); and supporting declarations, (Docs. 10, 15). On September 4, 2019, Jscout filed a motion to vacate the temporary restraining order, accompanied by a declaration and memorandum of law in support. (Docs. 20–22.) On September 11, 2019, Plaintiffs filed a memorandum of law, declaration, and exhibits in opposition to Jscout's motion, (Docs. 26–27), and on September 13, 2019, Jscout filed a reply, (Doc. 30).

On September 18, 2019, I held a telephone conference to discuss Jscout's motion. After hearing from the parties, I indicated to the parties my intention to partially dissolve the temporary restraining order as to JScout to the extent that Plaintiff was to post additional security in the amount of $100,000, Jscout's assets were to be placed in escrow, and Jscout's merchant storefront was to be unfrozen. (Tr. 14:12–21.) I directed the parties to meet and confer on a proposed order incorporating these instructions. The parties submitted dueling proposed orders, and on October 3, 2019, I issued an order granting partial relief from the temporary restraining order and asset freeze as to Jscout. (*See* Doc. 44.)

4

On October 25, 2019, I held the preliminary injunction hearing, at which Jscout was the only Defendant to appear. Jscout indicated that it had removed the phrase "Wall Climber" from its product manual for future sales. Accordingly, the parties agreed to partially vacate the TRO on consent as to Jscout. However, the parties disagreed as to whether Jscout's assets, in the amount of $150,000, should continue to be restrained. I directed the parties to 1) submit a proposed order phasing out the temporary restraining order, and 2) brief their respective positions on the asset freeze. I also instructed Plaintiffs to submit a proposed preliminary injunction order as to the Defendants remaining in the case who had not appeared. I reiterated these directives by written order later that day. (Doc. 69.)

On November 1, 2019, Plaintiffs submitted their memorandum of law in support of their request to continue the freeze on Jscout's assets, or, in the alternative, to require JScout to post a bond. (Doc. 70.) On the same day, Jscout filed the parties' proposed consent order dissolving the temporary restraining order as to Jscout, (Doc. 73), which I issued on November 5, 2019, (Doc. 73). I also issued a preliminary injunction order against all remaining Defendants except Jscout. (Doc. 74). On November 8, 2019, Jscout submitted a memorandum of law in opposition to Planitiff's motion to continue the asset freeze. (Doc. 77.) On November 19, 2019, with Jscout's consent, (Doc. 72), and leave of this Court, (Doc. 82), Plaintiffs filed a second amended complaint. (Doc. 83.)

### III. Legal Standard

To obtain a preliminary injunction, a moving party must demonstrate: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v.*

*Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (citation omitted). "[A]n irreparable injury is an injury that is not remote or speculative but actual and imminent, [] for which a monetary award cannot be adequate compensation," *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (internal quotation marks omitted), and which cannot be remedied "if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Sterling v. Deutsche Bank Nat'l Tr. Co. as Trustees for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 727 (S.D.N.Y. 2019) (quoting *Freedom Holdings, Inc. v. Spitzer,* 408 F.3d 112, 114 (2d Cir. 2005) (citation omitted)). "Thus, if a party fails to show irreparable harm, a court need not [] address the remaining elements." *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019).

### IV. Discussion

#### A. *Plaintiff's Motion for a Preliminary Injunction Continuing the Freeze On Jscout's Assets*

Plaintiffs argue generally that an asset freeze is justified because Jscout is likely to dissipate assets because 1) Declarant Le initially misrepresented Jscout's sales of Epoch Air Car, and 2) Jscout uses PingPong, a cross-border payment processing system, and 3) Jscout is based in China. (Pl.'s Asset Freeze Mem. 4.) Jscout contends that Plaintiffs have failed to show irreparable harm or a likelihood of success on the merits. (Jscout's Asset Freeze Opp. 1–2.)[7] I agree with Jscout that a continuing asset freeze is not warranted. Set forth below are my findings

---

[7] "Jscout's Asset Freeze Opp." refers to Jscout's Memorandum of Law in Opposition To Plaintiff's Request To Continue The Freeze On Jscout's Assets, Or, In The Alternative To Require Jscout To Post a Bond, filed on November 8, 2019. (Doc. 77.)

of fact and conclusions of law pursuant to Rules 52(a)(2) and 65 of the Federal Rules of Civil Procedure, which I note are not binding at summary judgment or at a trial on the merits. *See 725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 470 n.32 (S.D.N.Y. 2019).

### 1. Applicable Law

A "court may not enter a preliminary injunction simply to safeguard [a defendant's] assets in the event that [defendant is] ultimately held liable on these claims." *Dong v. Miller*, No. 16CV5836NGGJO, 2018 WL 1445573, at *9 (E.D.N.Y. Mar. 23, 2018) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund. Inc.*, 527 U.S. 308 (1999)). However, a court has authority to freeze a defendant's assets where the plaintiff is "pursuing a claim for final equitable relief [] and the preliminary injunction is ancillary to the final relief." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 131 (2d Cir. 2014). Eligible relief includes a claim for an equitable "accounting" of wrongly gained profits under the Lanham Act. *Id.*; *see also N. Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083 (RMB), 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006) ("District courts have the authority to freeze those assets which could be used to satisfy an equitable award of profits." (internal quotation marks omitted)).

### 2. Application

Plaintiffs seek an award of profits as well as damages on their Lanham Act trademark infringement claim. (FAC, at 24.) Therefore, as a threshold matter, I have the authority to freeze Jscout's assets to preserve Plaintiffs' equitable claim for profits, regardless of the fact that they also assert damages claims at law. *See Gucci Am.*, 768 F.3d at 130; *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11 Civ. 3489(JMF), 2013 WL 1915330, at *2 (S.D.N.Y. May 9, 2013). Any asset freeze must be limited to an amount sufficient to preserve the equitable claim, and may not be used "preserve funds that may later be used to satisfy an award of statutory

damages." *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283(AJN), 2012 WL 5265727, at *5 (S.D.N.Y. Oct. 24, 2012). However, Plaintiffs have not satisfied the test for a preliminary injunction,[8] and they misrepresent the burden of proof on the instant motion.

Plaintiffs contend that the burden is on Jscout to "present documentary proof that particular assets are not the proceeds of counterfeiting activities." (Pls.' Asset Freeze Mem. 3.) However, the cases[9] cited for this proposition involve requests by defendants for relief from asset freezes already imposed by preliminary injunction. *See N. Face Apparel Corp.*, 2006 WL 838993, at *3 (where defendant consented to preliminary injunction, and did not appear to dispute the merits of the counterfeit claim but sought for the asset restraints to be "modified," burden was on defendant to show that the assets it wanted released were not earned from counterfeiting activities); *Cartier Int'l B.V. v. Liu*, No. 02 Civ. 7926(TPG), 2003 WL 1900852, at *1 (S.D.N.Y. Apr. 17, 2003) (on a motion to vacate a preliminary injunction freezing defendant's assets to release a portion of those assets, defendant bore the burden of showing that a portion of the assets were not the proceeds of counterfeiting activities, in part because the preliminary injunction order contained a provision to that effect). Here, in contrast, the parties have not consented to a preliminary injunction nor have I made any factual findings or entered an order myself. Rather, what is before me is Plaintiffs' motion for a preliminary injunction, and they

---

[8] Although Plaintiffs addressed the preliminary injunction standard in prior briefing, they do not frame their request for a continuing asset freeze as a motion for a preliminary injunction. Nevertheless, because courts consider prejudgment asset freezes as preliminary injunctions, *see generally Gucci Am.*, 768 F.3d at 130, I apply the preliminary injunction standard to Plaintiffs' request.

[9] Plaintiffs' third citation for this proposition, (Pl.'s Mem. 3, citing "*IdeaVillage Products Corp. v. Bling Boutique Store, et al.*, No. 1:16-cv-9039-KMW, Dkt. 9 (S.D.N.Y. Nov. 21, 2016)"—a document actually filed on ECF on December 9, 2016—is a temporary restraining order in a case brought by the same firm that represents Plaintiffs in this action. The order, although it was signed by the Honorable Kimba Wood, appears to have been drafted by counsel, based on its substantial similarity to the order proposed in this action. Moreover, Plaintiffs' memorandum contains no pinpoint citation to a particular page or paragraph of this order, and on reviewing the document I cannot locate the quotation cited. To the extent that I may have overlooked the quoted material, it would nevertheless be inapplicable to a motion for a preliminary injunction.

bear the burden of making the requisite showing. *See MyWebGrocer*, LLC, 375 F.3d at 192. I find that Plaintiffs have failed to carry that burden.

Plaintiffs make several contentions as purported support for their assertion that Jscout will dissipate assets in the absence of a freeze; I construe these efforts as an attempt to establish irreparable harm. Although monetary harm is not ordinarily considered "irreparable," *Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861 (JPO), 2015 WL 170442, at *7 (S.D.N.Y. Jan. 13, 2015) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)), "such harm may be irreparable where there has been a showing of intent to frustrate any judgment on the merits," *Shamrock Power Sales, LLC v. Scherer*, No. 12-CV-8959 (KMK) (JCM), 2016 WL 6102370, at *10 (S.D.N.Y. Oct. 18, 2016) (internal quotation marks omitted).

First, Plaintiffs state that Jscout made misrepresentations to the Court about the volume of Jscout's Amazon sales of the Epoch Air Car. (Pls.' Asset Freeze Mem. 4–5.) Among Jscout's motion papers was the declaration of Jscout manager Wang Le, asserting that the Epoch Air Car made up $546,291 of Jscout's sales since 2017, or 30 percent. (Le Dec. ¶ 5.)[10] In their opposition, Plaintiffs stated they had learned through discovery from Amazon that Jscout has sold $1,289,903.65 worth of Epoch Air cars. (Scully Dec. ¶ 19.) Plaintiffs did not specify the time period in which these sales were allegedly made.

In a reply declaration, Le stated that he had made a mistake in his prior declaration due to issues in "communications and translations" and a misunderstanding about certain identifying product numbers used by Amazon. (Le Reply Dec. ¶¶ 2–4.)[11] He also stated he did not have

---

[10] "Le Dec." refers to the Declaration of Wang Le In Support of Motion to Dissolve or Modify The Ex Parte Restraining Order, filed on September 4, 2019. (Doc. 21.)

[11] "Le Reply Dec." refers to the Amended Declaration of Wang Le In Support of Motion to Dissolve or Modify The Ex Parte Restraining Order, filed on September 13, 2019. (Doc. 31.)

9

sales data dating back farther than October 1, 2017. (*Id.* ¶ 6.) Le stated that he had revisited his records and reported that since October 1, 2017, Jscout had sold $1,349,219 of the Epoch Air Car. (*Id.* ¶ 6–7).

In addition, Plaintiffs argue that it is "extremely likely that the number of sales of Counterfeit problems made and sold by Defendant Jscout greatly exceeds the numbers identified in Amazon's Supplemental Discovery," because Jscout may have other "Infringing Listings" and because the Epoch Air Car can be purchased from www.epochair.site. (Pls.' Asset Freeze Mem. 4–5.)

Plaintiffs provide no evidence for the broad assertion that Jscout maintains other infringing listings, despite the fact that this would be fairly simple to substantiate, if true. In addition, Jscout states that it does not manufacture the Epoch Air Car or run the Epoch Air website, and that moreover, the website does not actually allow a user to finalize a purchase of the Epoch Air Car. (Le Supp. Dec. ¶ 3; Lewis Dec. ¶¶ 2–5.)[12] Accordingly, in the absence of any other indicia of bad faith, I find Le's specific and prompt explanation for his initial misreporting of Jscout's sales sufficient to establish that it was inadvertent. Jscout's initial misreporting of sales does not weigh in favor of an asset freeze.

Next, Plaintiffs point to the facts that Jscout is a Chinese corporation and uses PingPong Global Solutions Inc. to process payments received on Amazon and then forwards them to Jscout's bank account(s). (Pls.' Asset Freeze Mem. 5–7.) According to Plaintiffs, judgments against defendants in China are "difficult, if not impossible" to enforce, and counterfeiters "frequently" connect their Amazon accounts to PingPong to "avoid having to provide Amazon

---

[12] "Le Supp. Dec." refers to the Supplemental Declaration of Wang Le In Opposition To Asset Seizure Order, filed on November 8, 2019. (Doc. 77-1.) "Lewis Dec." refers to the Declaration of Brett E. Lewis In Opposition To Asset Freeze Order, filed on November 8, 2019. (Doc. 77-2.)

with [their] personal banking information, thus concealing assets." (*Id.* at 5.) Plaintiffs allege they did not obtain information about Jscout's bank accounts through discovery received from PayPal, and Jscout's use of PingPong makes it likely that Plaintiffs "will experience great difficulty in collecting on their judgment as Plaintiffs are not in possession of any banking information for Jscout." (*Id.*) Plaintiffs do not state whether they have received discovery as to Jscout from PingPong, (*see id.*), and Jscout's counsel contends that PingPong is, in fact, in possession of Jscout's bank account information, (Jscout's Asset Freeze Mem. 4).

Plaintiffs' sweeping statements about the practices of foreign corporations and counterfeiters in general are unsupported by evidence and, more importantly, do not speak to the question of whether Jscout, a specific corporation whose liability for counterfeiting is merely alleged, not established, is likely to dissipate assets. Plaintiffs provide no legal authority for their argument that the harsh remedy of an asset freeze would be justified by the mere fact that a corporation is Chinese and uses a cross-border payment processing service. Implementing Plaintiff's theory would chill the huge volume of business conducted by foreign corporations with customers and corporations in the United States.

Beyond these statements, Plaintiffs point to no conduct by Jscout that would suggest it intends to frustrate a potential judgment against it. Indeed, Jscout has retained counsel and appeared in this action, and took prompt action to remove the allegedly infringing language from its product manual for future sales. Based on Jscout's representations, it maintains discoverable bank accounts, does a substantial volume of business, and maintains accounts with U.S.-based payment processing companies through which cash flows regularly. These facts suggest Plaintiffs would be able to enforce a judgment, should it obtain one. *Cf. Klipsch*, 2012 WL 5265727, at *11 (narrowing the amount of an asset freeze issued after a finding of irreparable

11

harm and likelihood of success on the merits, where defendant did "an adequate volume of business and ha[d] sufficient funds flowing through United States-based payment processors for [p]laintiff to seize as a judgment creditor should [defendant] fail to pay money owed").

This contrasts sharply with other cases in which courts have found irreparable harm justifying an asset freeze where the defendant(s) had engaged in a pattern of fraudulent or evasive conduct. *See Dong v. Miller*, No. 16-CV-5836 (NGG) (JO), 2018 WL 1445573, at *11 (E.D.N.Y. Mar. 23, 2018); *Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*, No. 16 Civ. 6805 (JSR), 2017 WL 737315, at *3 (S.D.N.Y. Feb. 6, 2017); *Shamrock Power Sales*, 2016 WL 6102370, at *10.

Plaintiffs have therefore failed to make a showing of irreparable harm that is "actual and imminent." *Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66. Because irreparable harm is the most important prerequisite for a preliminary injunction, no injunction may issue in the absence of such harm, and I need not reach the question of whether Plaintiffs have established a likelihood of success on the merits. Accordingly, Plaintiffs request for a preliminary injunction continuing to freeze Jscout's assets is denied.

### B. *Plaintiff's Request That Jscout Post a Local Rule 54.2 Bond*

In the alternative, Plaintiffs argue that I should order Jscout to post a bond sufficient to satisfy a judgment against it, in the amount of $150,000, pursuant to Local Civil Rule 54.2. (Pls.' Asset Freeze Mem. 8–9.) Jscout opposes. (Jscout's Asset Freeze Mem. 6–9.)

Under Local Civil Rule 54.2, the Court "may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." In determining whether to require security for costs, courts consider the following factors enunciated in *Selletti v. Carey*, 173 F.R.D. 96, 100 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 104 (2d Cir.

1999): "[1] the financial condition and ability to pay of the party at issue; [2] whether that party is a non-resident or foreign corporation; [3] the merits of the underlying claims; [4] the extent and scope of discovery; [5] the legal costs expected to be incurred; and [6] compliance with past court orders." *Cruz v. Am. Broad. Companies, Inc.*, No. 17-cv-8794 (LAK), 2017 WL 5665657, at *1 (S.D.N.Y. Nov. 17, 2017) (citing *Selleti*, 173 F.R.D. at 100). "Under Rule 54.2, security for costs may include security for attorney's fees when a party is potentially entitled to attorney's fees by statute." *Johnson v. Kassovitz*, No. 97 CIV. 5789 DLC, 1998 WL 655534, at *1 (S.D.N.Y. Sept. 24, 1998). Attorneys' fees are available in "exceptional" Lanham Act cases, upon evidence of fraud, bad faith, or willful infringement. 15 U.S.C. § 1117(a); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

    In their brief, Plaintiffs attempt to have it both ways. Although they cite cases for the proposition that a bond may include attorneys' fees in Lanham Act claims, their actual request is for a bond "sufficient to satisfy a judgment entered against" Jscout, not to satisfy a claim for attorneys' fees. However, Rule 54.2 grants me discretion to require a party to post a bond sufficient to cover costs; its plain language does not contemplate a bond that guarantees a plaintiff the ultimate relief it seeks. Plaintiffs cite to no authority supporting such an expansive reading of the rule.

    To the extent that Plaintiffs seek a bond to secure their attorneys' fees, this request, too, is insufficiently supported. They present no arguments suggesting that any infringement by Jscout was willful, such that this case is one of the "exceptional" few in which attorneys' fees are justified. Moreover, they provide no information as to the amount of attorneys' fees that have been or will be accrued by Plaintiffs. Therefore, even if I were to conclude that Defendant should be compelled to post a bond guaranteeing Plaintiffs' attorneys' fees, I would be unable to

determine the appropriate amount of that bond. *Teri v. Oxford Mgmt. Servs., Inc.*, No. 05 CV 2777(DRH)(WDW), 2013 WL 132660, at *5 (E.D.N.Y. Jan. 10, 2013) (where plaintiffs did not provide "any cost estimate or invoices for attorney's fees" that would support the bond requested, the court would not require defendants to post the bond amount requested and would "not set some arbitrary bond amount instead"); *RLS Assocs., LLC v. United Bank of Kuwait PLC*, No. 01 Civ. 1290(CSH), 2005 WL 578917, at *4 (S.D.N.Y. Mar. 11, 2005) (denying application for cost bond even though applicant's "entitlement in principle" was established because the record did not support it would be entitled to attorneys' fees and expenses in the amount requested), *adhered to on reconsideration*, 464 F. Supp. 2d 206 (S.D.N.Y. 2006).

Accordingly, Plaintiffs' request that Jscout be ordered to post a bond in an amount sufficient to satisfy a judgment against it is denied.

## V. Conclusion

For the reasons stated above, Plaintiffs' motion for a preliminary injunction freezing Defendant Jscout's assets is DENIED. Plaintiffs' request that Jscout be ordered to post a bond in an amount sufficient to satisfy a judgment against it is also DENIED. The parties are directed to meet and confer to ensure that all assets belong to Jscout that are in escrow or are frozen with a financial institution are unrestrained and/or returned forthwith. The Clerk of Court is respectfully directed to terminate the open motions.

SO ORDERED.

Dated: November 4, 2020
New York, New York

Vernon S. Broderick
United States District Judge