```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
SPIN MASTER, et al.,                                        :
                                                            :
                              Plaintiffs,                   :
                                                            :         19-CV-6949 (VSB)
                -against-                                   :
                                                            :         **OPINION & ORDER**
                                                            :
ACIPER, et al.,                                             :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X
```

Appearances:

Jason M. Drangel
Brieanne Scully
Danielle Yamali
Epstein Drangel LLP
New York, New York
*Counsel for Plaintiffs*

Brett Lewis
Lewis & Lin LLC
Brooklyn, New York
*Counsel for Defendant Jscout*

VERNON S. BRODERICK, United States District Judge:

      Defendant Jscout ("Jscout") moves to dismiss the Second Amended Complaint filed against it by Plaintiffs Spin Master Ltd. and Spin Master Inc. ("Plaintiffs"). Because I find that Plaintiffs have (1) failed to plead sufficient facts to plausibly allege their claims for trademark infringement or to support their "related" state law claims as against Jscout, and (2) plausibly alleged their patent claims, Jscout's motion to dismiss is GRANTED IN PART and DENIED IN PART.

I.  **<u>Factual Background</u>**[1]

Plaintiffs are part of "a large, multinational toy and entertainment company" that sells a variety of "children's lifestyle products and toys under" various brandings. (SAC ¶ 9.)[2] One of Plaintiffs' brands is "Air Hogs," which consist of various remote-control toys.[3] Of relevance for this case is the "Zero Gravity Laser Racer" product line (the "Racer Products"), a group of remote-controlled toy cars that use "patented technology . . . to drive along the floor, up the walls, and even upside down" by following a beam of light projected by a remote control. (*Id.* ¶ 12.) In connection with the Racer Products, Plaintiffs own the federally registered trademarks "WALL CLIMBER" and "ZERO GRAVITY," (the "WC Mark" and the "ZG Mark," respectfully, and, together, the "Racer Marks"), for goods in class 28.[4] (*Id.* ¶ 15). Plaintiffs say that they have undertaken efforts to develop "awareness and goodwill in their Racer Products and [Racer Marks]," (*id.* ¶ 17), and that the Racer Marks are "prominently placed in the minds of the public" and thus have "a valuable reputation and goodwill among the public," (*id.* ¶¶ 21–22).

---

[1] The following facts are taken from the Second Amended Complaint, its accompanying exhibits, and certain websites referenced in the Second Amended Complaint. I assume the factual allegations set forth in the Second Amended Complaint, its accompanying exhibits, and on the relevant websites, to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks and citations omitted)); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). My references to these facts should not be construed as a finding as to their veracity, and I make no such findings.

[2] "SAC" refers to Plaintiffs' Second Amended Complaint, (Doc. 83), and the exhibits thereto.

[3] Plaintiffs' website, "http://airhogs.com," (SAC ¶ 18), states, "Air Hogs is the gravity-defying RC brand that puts YOU in the driver's seat! Experience the heart-pumping adrenaline of pushing beyond your limits to do things you thought were impossible!" Air Hogs, http://airhogs.com (last accessed March 31, 2022).

[4] United States Patent and Trademark Office divides trademark uses into 45 different "classes" of products or services. Class 28 includes "[t]oys and sporting goods." *See* Trademark Manual of Examining Procedure § 1401.02(a).

Plaintiffs brought this suit against approximately 50 Defendants, all of whom are believed to be "individuals and/or businesses . . . located in China" that sell products mimicking the Racer Products to consumers in the United States through Amazon. (*Id.* ¶¶ 28–30). The numbered paragraphs in Plaintiffs' pleadings largely concern all Defendants, and Plaintiffs refer to certain exhibits attached to the Second Amended Complaint to provide specifics as to each Defendant. (*See, e.g.*, SAC ¶ 34 ("Plaintiffs learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing . . . and/or selling Counterfeit Products to U.S. consumers. . . . Printouts of [Defendants'] Infringing Listings [on Amazon] are included in **Exhibit C** attached hereto and incorporated herein by reference.").) By way of one example, Plaintiffs provide a side-by-side comparison of one of their Racer Products with the similar product sold by non-moving Defendant Ada Toyz; Plaintiffs plead,

> there is no question that the Ada Toyz [product] is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' Racer Products or that the Ada Toyz [product] is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of one or more of the [Racer Marks]:

| Racer Product | Defendant's Counterfeit Product |
|---|---|
|  |  |
|  |  |

(SAC ¶ 39.)

Plaintiffs make specific reference to one Defendant, Jscout, in the numbered paragraphs of the Second Amended Complaint under a heading titled "Jscout's Patent Infringement[.]" (SAC 15.) Jscout "imports into the United States . . . battery-powered, remote control, wall climbing toys" that it sells "via Amazon" and which are similar to the Racer Products. (*Id.* ¶¶ 54, 116.) Plaintiffs provide these images of Jscout's relevant product:





(SAC Ex. C, at 331–34.)  The product manual included with Jscout's product uses the phrase "Wall Climber Car" on it:



(*Id.* at 335.)  By way of comparison, Plaintiffs provide these images of one of the Racer Products:



(SAC Ex. A, at 1–2.) Plaintiffs only provide evidence demonstrating that Jscout sells its relevant products on Amazon, and no pleadings suggest that Jscout sells anywhere else. (*See* SAC Ex. C, at 322–25.) By comparison, Plaintiffs' website shows that they sell their products through Amazon, Target, and Walmart.

## II.     Relevant Procedural History

This case has a lengthy procedural history that is recounted in greater detail in *Spin Master v. Aciper*, 19-CV-6949 (VSB), 2020 WL 6482878, at *2 (S.D.N.Y. Nov. 4, 2020). As such, familiarity with this case's procedural history is presumed, and I will only recount the history necessary for this motion.

The Second Amended Complaint alleges three counts of trademark infringement against all Defendants under various sections of the Lanham Act—sections 32, 32(a), 34, 35, and 43(a), codified at 15 U.S.C. §§ 1114–1117 and 1125(a). (SAC ¶¶ 61–92.) It also alleges two New York State common law claims—unfair competition, (*id.* ¶¶ 93–99), and unjust enrichment, (*id.* ¶¶ 100–02)—as well as five counts of patent infringement against only Jscout, (*id.* ¶¶ 103–52). Jscout moved to dismiss Plaintiffs' Second Amended Complaint on December 4, 2019. (Doc. 87.) Plaintiffs filed their brief in opposition to Jscout's motion, as well as a supporting declaration with exhibits, on January 6, 2020. (Docs. 91–92.) Jscout filed its reply brief on January 21, 2020. (Doc. 94.)

## III.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff

7

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted). A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (internal quotation marks omitted). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

**IV. Discussion**

In their memoranda, the parties appear to agree on two matters that serve to narrow the scope of the analysis needed to resolve the instant motion. First, the parties appear to agree that a decision dismissing the trademark infringement claims will resolve this motion for the purposes of the state law unjust enrichment and unfair competition claims. (*See* MTD Mem. 6

(addressing the trademark claims along with the state law claims); MTD Opp. 4 (arguing that Plaintiffs "sufficiently allege[] [their] trademark infringement claim" and thus that their "related claims" should also survive the motion to dismiss).)[5] In other words, the parties agree that if the trademark infringement claims are dismissed as insufficient, then the state law claims of unjust enrichment and unfair competition are also insufficient. Because the parties are correct that dismissal of the trademark claims will result in dismissal of the related state law claims, *see Outhouse PR, LLC v. Northstar Travel Media, LLC*, 19 Civ. 5979 (NRB), 2020 WL 2512092, at *3, *8 (S.D.N.Y. May 15, 2020) (dismissing Lanham Act claims and "unfair competition claims under New York law" on the same analysis), *vacated on other grounds*, 2020 WL 12979826 (S.D.N.Y. Oct. 28, 2020); *Int'l Leisure Prod., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 26 (2d Cir. 2018) ("If [plaintiff] has no protectable trade dress in its . . . product, then [plaintiff]'s allegations of wrongdoing . . . [are] an inadequate basis for a claim of unjust enrichment."), I will begin by assessing the sufficiency of the pleadings as they pertain to Plaintiffs' trademark claims.

Second, while Plaintiffs assert their trademark claims against approximately 50 different Defendants for alleged infringement of both or either of the two Racer Marks, only Jscout's use of the WC Mark is at issue for purposes of the instant motion. Jscout argues that its "consumer facing materials . . . contain no reference to" either the ZG Mark or the WC Mark, and that its "sole use of the [WC Mark]" appears "in [its product's] user's manual, inside the product packaging." (MTD Mem. 9.) Plaintiffs' opposition briefing focuses only on whether Plaintiffs have stated a trademark claim over "Jscout's use of the [WC] Mark," (*see* MTD Opp. 6), and

---

[5] "MTD Mem." refers to Jscout's memorandum filed in support of its motion to dismiss the Second Amended Complaint. (Doc. 87.) "MTD Opp." refers to Plaintiffs' brief filed in opposition to Jscout's motion to dismiss the Second Amended Complaint. (Doc. 91.)

nowhere do Plaintiffs argue that Jscout has infringed on the ZG Mark. Thus, the parties agree that Plaintiffs' claims against Jscout only concern the WC Mark, not the ZG Mark, and I will thus only evaluate whether Plaintiffs have sufficiently pled Jscout's infringing use of the WC Mark.

### A. *Trademark Infringement*

Plaintiffs' three Lanham Act trademark claims, which are asserted under 15 U.S.C. §§ 1114 and 1125, (SAC ¶¶ 61–92), all require them to plead "sufficient facts to establish, first, that the plaintiff's mark is entitled to protection, and second, that the defendant's 'use of its mark is likely to cause consumers confusion as to the origin or sponsorship of its goods.'" *OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 563 (S.D.N.Y. 2020) (quoting *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016)), *appeal dismissed sub nom. OffWhite Prods. LLC v. Off---White LLC*, No. 20-3178, 2021 WL 1247863 (2d Cir. Feb. 8, 2021).

With regard to the first prong of the Lanham Act claim, Plaintiffs allege that they own the federally registered Racer Marks. (SAC ¶ 15 & Ex. B.) The Racer Marks' registrations thus serve as "*prima facie* evidence of [Plaintiffs'] exclusive right to use th[ose] mark[s] in commerce on the product," which generally satisfies the first prong of a trademark infringement claim. *Gruner + Jahr USA Publ'g. v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993). In spite of this, Jscout argues the allegations are insufficient to show that the WC Mark is entitled to protection, because Plaintiffs failed to allege that they in fact use the WC Mark "in commerce" to identify the Racer Products. (*See* MTD Mem. 7.) Jscout is incorrect. Plaintiffs included with their pleadings images of one of the Racer Products' packaging, and it clearly says "Real Wall Climber" on the front panel of the packaging, albeit in small print, in the bottom left corner. (SAC Ex. A.) This is enough to satisfy the first element at the pleadings stage. This takes the

analysis to the second prong of the trademark infringement claim.

"The crucial issue in an action for trademark infringement is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978)). Courts in this circuit often employ the eight-factor *Polaroid* test to assess likelihood of consumer confusion, but "not all [factors] have to be satisfied to establish a claim, and no one factor is dispositive." *OffWhite Prods.*, 480 F. Supp. 3d at 564 (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961)). However, "[t]he 'evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused.'" *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 85 (2d Cir. 2020) (quoting *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000)). Specifically, I must determine whether Jscout's "use of [Plaintiffs'] mark is likely to cause consumers confusion as to the origin or sponsorship of its goods." *Offwhite Prods.*, 480 F. Supp. 3d at 563 (quoting *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016)). "In the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a consumer will be confused into believing that the plaintiff endorsed the defendant's work." *Id.* at 364 (quoting *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012)) (collecting cases).

In this case, Plaintiffs have pleaded images of and marketing materials for their Racer Products, as well as images of Jscout's relevant products and packaging. According to these, and

undisputed in the parties' briefings, Jscout's only use of anything resembling the WC Mark is by writing the phrase "Wall Climber Car" on the manual that comes packaged with Jscout's product.[6] A consumer would not see this phrase until after purchasing and opening Jscout's product. Accordingly, there is no possibility of "pre-sale confusion" or "point-of-sale confusion." *See Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 286 (S.D.N.Y. 2018). As such, Plaintiffs' pleadings do not establish that Jscout's inclusion of the phrase "Wall Climber Car" in the product manual could result in a consumer's "believing that the plaintiff endorsed the defendant's work." *Louis Vuitton*, 868 F. Supp. 2d at 183.

Given the allegations that Defendants sell their products exclusively through Amazon, and that Defendants' products have design characteristics and functions that resemble or mirror Plaintiffs' Racer Products, (*see, e.g.*, *id.* ¶ 40), it is plausible that a consumer who searches Amazon for "wall climbing car" or similar will be confronted with Defendants' wares, including Jscout's products, as well as with Plaintiffs' Racer Products. However, Plaintiffs do not allege that the design elements of its Racer Products are protected or in issue. Nor do Plaintiffs aver that they have a legally protected interest in descriptive search terms that may serve to return both Plaintiffs' and Jscout's products on Amazon.[7]

In arguing that their pleadings adequately show a likelihood of consumer confusion, Plaintiffs say they met "the notice-pleading standard" because the Second Amended Complaint

---

[6] At a hearing in this action held on October 25, 2019, Jscout represented that "Wall Climber no longer appears on the manual" included with its product. (Doc. 88, at 25:6–9.)

[7] Even if made, such an argument would be insufficient. *See EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000) (holding that the fair use defense protects a defendant who uses a term "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith").

says "that Defendants' acts . . . created 'a likelihood of confusion by consumers as to the source of [Defendants'] [p]roducts . . . .'" (MTD Opp. 9) (quoting SAC ¶ 87). This argument fails because Plaintiffs supply no facts about what supposed "acts" would create this likelihood of confusion or even plead that Jscout, as opposed to the Defendants collectively, engaged in any of these acts. Plaintiffs are thus relying on a legal conclusion rather than on well-pleaded facts, and I cannot rely on "legal conclusions" for the purposes of Jscout's Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. Plaintiffs have thus failed to plead facts that, accepted as true, would allow me to infer viable "theories as to how consumers might be confused" due to Jscout's usage of something resembling the WC Mark. *OffWhite Prods.*, 480 F. Supp. 3d at 565.

Plaintiffs next argue that they "need not establish" through their pleadings "a likelihood of *pre*-sale confusion," because here, the product manual included with Jscout's product says "Wall Climber Car," which could lead to "initial-interest confusion" or "post-sale confusion." (MTD Opp. 10 (citing *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 666 (S.D.N.Y. 2016), *aff'd*, *LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA*, 720 F. App'x 24 (2d Cir. 2017)).

Neither theory is viable. "Initial-interest confusion occurs when a potential customer is initially attracted to the junior user's product by virtue of its use of a mark that is confusingly similar to the senior user's mark." *LVL XIII*, 209 F. Supp. 3d at 666 n.79 (citing *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331, 1342 (2d Cir. 1975)). Plaintiffs neither plead facts nor even argue that any consumers ever were drawn to Jscout's products because of its use of any mark. Again, the most I can say of Plaintiffs' pleadings is that a consumer may be drawn to Jscout's product because Plaintiffs have created consumer interest in a novel category of remote-control toy cars. However, this is not something

13

the Lanham Act protects.

"[P]ost-sale confusion can occur when a manufacturer of knockoff goods offers consumers a cheap knockoff copy of the original manufacturer's more expensive product, thus allowing a buyer to acquire the prestige of owning what appears to be the more expensive product." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 108 (2d Cir. 2000). That final clause is critical, as the doctrine applies to the sort of "prestigious article[s]" that a consumer may be said to gain "prestige" by "displaying" to others. *Id.* at 108 (internal quotation marks omitted). The theory of harm in these cases is that "the general public . . . may believe that the knockoff is actually the genuine article" associated with prestige. *Id.* at 108–09. Indeed, the post-sale confusion cases are almost all associated with luxury brands. *See, e.g.*, *id.* at 106 (product was "a handcrafted purse with an average selling price of over $5,000, with some models selling for over $30,000"); *Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-LeCoultre Watches, Inc.*, 221 F.2d 464, 465 (2d Cir. 1955) (applying doctrine to clocks, where the prestigious product "sold for not less than $175" and the competing product "sold for $30[] or $40"). In the few cases where the doctrine has been found to apply to non-luxury products, courts have found facts showing an "intimate association between" an identifying characteristic of a product and the plaintiff's "products in the buying public's mind." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 869 (2d Cir. 1986) (affirming application of post-sale confusion doctrine to the stitching pattern on Levi Jeans because "[i]n many ways the back pocket stitching pattern has become the embodiment of Levi Jeans in the minds of jeans buyers").

Here, the post-sale confusion doctrine is inapplicable. First, although Plaintiffs plead that their products are slightly more expensive than are Jscout's products (*compare* SAC ¶ 13 ("The

14

Racer Products generally retail from $32.00 to $35.00.") *with* SAC Ex. C, at 322 (showing that Jscout's product sells on Amazon for $21.99)), they do not plead facts suggesting that there is somehow "prestige" associated with owning their Racer Products.  Second, Plaintiffs have not pleaded any facts tending to show some "intimate association" that consumers believe exists between the WC Mark and Plaintiffs' Racer Products.  Therefore, Plaintiffs cannot establish the applicability of the post-sale confusion doctrine.

### B.  *Patent Infringement*

Jscout raises two arguments to support its position that the patent claims should be dismissed.  Neither are correct.

First, Jscout argues that Plaintiffs lack "standing" to assert the patent claims because they are "neither the owner nor the exclusive licensee of a substantial interest in any of the" relevant patents, an argument it interposes by reference to a license agreement that was produced to it.  (*See* MTD Mem. 15–17.)  Jscout says I can consider the license agreement because, by challenging "standing," it has made a Rule 12(b)(1) motion through which I may look to materials outside the scope of Plaintiffs' pleadings.  (*Id.*)

This argument misapprehends the "distinction between having standing to pursue a claim" in a constitutional sense, *see Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 380 (2d Cir. 2021), and "prudential standing concerns" pertaining to which party or parties may assert a particular cause of action, *see Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed Cir. 2007) (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 467, 469 (1926), and *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001)).  The so-called "'prudential' branch of standing" is "a doctrine not derived from Article III," and thus it does not implicate a federal court's subject matter jurisdiction.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126

(2014). Rather, "prudential standing" goes to "whether 'this particular class of persons has a right to sue under'" whatever substantive statute creates the cause of action in question. *Id.* at 127 (quoting *Assoc. of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 675–76 (D.C. Cir. 2013) (Silberman, J., concurring). The Federal Circuit has recognized this. *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019) ("*Lexmark* is irreconcilable with our earlier authority treating § 281 as a jurisdictional requirement. . . . [M]otions to dismiss based on 'statutory standing' defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1) in recognition of the fact that such defects are not jurisdictional.").

Here, Plaintiffs have stated a patent claim sufficient to invoke federal jurisdiction. "To determine whether section 1338 jurisdiction attaches, the court must look to see whether the plaintiff has stated, in a well-pleaded complaint, a claim arising under the patent laws." *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002) (quoting *Jim Arnold Corp. v. Hydrotech Sys., Inc.,* 109 F.3d 1567, 1576 (Fed. Cir. 1997)). The Second Amended Complaint states that Plaintiff "Spin Master Ltd. is the exclusive licensee to all the rights and interests in each of the Patents, including the right to sue in its own name." (SAC ¶ 6.) Plaintiffs go on to plead their patent claims based on this assertion. (*See, e.g.*, *id.* ¶¶ 104, 114, 124, 134, 144.) As a licensee, Plaintiffs have Article III standing to seek redress from an alleged infringer. *See, e.g.*, *Lone Star Silicon*, 925 F.3d at 1235–36. Accordingly, I consider Jscout only to be opposing Plaintiffs' statutory standing, which it cannot do through a Rule 12(b)(1) motion. *Id.* at 1235. This means I cannot look at the license agreement Jscout attempts to show me at this stage of the

litigation.[8]

Second, Jscout argues, by reference to a construction of the license agreement, that this action should be dismissed for failure to join necessary parties under Federal Rule of Civil Procedure 19. (MTD Mem. 18–19.) However, as discussed, I cannot refer to or resolve a construction of the license agreement at this stage of the litigation. As such, I cannot determine at this time whether the original patentees of the patents in question, through licensing, transferred "all substantial rights in the patents-in-suit," which would allow Plaintiffs "to sue" without joining the original patentees. *See Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1358–59 (Fed. Cir. 2010).

### V.     Conclusion

For the foregoing reasons, Jscout's motion to dismiss is GRANTED IN PART and DENIED IN PART. The first five causes of action in the Second Amended Complaint are dismissed as against Jscout, and Jscout's motion to dismiss is GRANTED as to these causes of action. Plaintiffs have plausibly alleged the five patent infringement causes of action pleaded against Jscout, and Jscout's motion to dismiss these causes of action is DENIED.

The Clerk of Court is respectfully directed to terminate the open motion at Document 87.

SO ORDERED.

Dated: April 1, 2022
New York, New York

*Vernon Broderick* (signature)

Vernon S. Broderick
United States District Judge

---

[8] To the extent Jscout wishes to challenge whether Plaintiffs can recover on the merits due to an issue in licensing, that is a "defense" it is free to plead in its answer. *Cf. Pixton*, 291 F.3d at 1327.